UNITED STATES of America,
Plaintiff–Appellee,

v.

Esteban CORRAL–GASTELUM,
Defendant–Appellant.

No. 99–10582.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 2000

Filed March 5, 2001

**1182**

Gregory J. Kuykendall, Tucson, Arizona, for the defendant-appellant.

Christina M. Cabanillas, Assistant United States Attorney, Tucson, Arizona, for the plaintiff-appellee.

Before: REINHARDT, LEAVY and SILVERMAN, Circuit Judges.

REINHARDT, Circuit Judge:

Esteban Corral–Gastelum appeals his convictions for conspiracy to possess with intent to distribute marijuana, 21 U.S.C. § 846, possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1), and use of a firearm during a drug trafficking crime, 18 U.S.C. § 924(c). We hold that the government's evidence was insufficient as a matter of law, and we reverse and remand to the district court with instructions to enter judgment of acquittal.[1]

## I. *Background*

On the evening of January 19, 1999, U.S. Border Patrol Agents Thomas Martin and John Welch responded to "sensor activity" in the Agua Fria Wash near the Arizona–Mexico border. The wash is known to law enforcement agents as a route commonly used by undocumented immigrants and narcotics smugglers. Agents Martin and Welch entered the wash and proceeded south on foot, hoping to intercept aliens or smugglers walking north. Two more agents, Timmerman and Rush, posted themselves farther north in the wash.

Shortly after Agents Martin and Welch entered the wash, they heard an "unintelligible voice and a rock hitting the ground" somewhere off to their left, or east. The agents crouched down to listen. Soon thereafter, they heard "brush crashes," indicating movement, to the south and east of their position. The agents "decided that the individual off to [their] left shouting and throwing rocks was attempting to distract [them] from the activity [they] had heard further south." As the agents moved south in the wash, they distinctly heard the person to the left shouting, in Spanish, "They are coming and they are going to kill you." However, the agents were unable to see the person who shouted those words.

Agent Welch took up a position by a mesquite tree, and Agent Martin continued to walk south, about 10 to 15 yards further, and posted himself just off the trail. Agent Martin testified that he heard louder brush crashes, and then saw a

---

1. Corral–Gastelum also challenges the district court's denial of his request for a two-point downward sentencing adjustment for acceptance of responsibility. Because we hold that Corral–Gastelum's convictions must be reversed, we do not consider his sentencing claim.

group of five people running towards him down the trail. After the first two had passed by him and when the third was directly in front of him, he called out: "Stop. Immigration." At that point, he could see all but the first member of the group. Three of the four people whom Agent Martin could see stopped, and one of the three appeared to have a gun pointed at Agent Martin. After Agent Welch turned on his flashlight, that person dropped his weapon and fled. According to Agent Martin's testimony, "[t]he second individual in line turned and ran straightaway from me west. The third, fourth and fifth turned around and ran back the exact same direction they had come from."

Agent Welch testified that he observed a group of four or five individuals moving towards his position. The first person in the line, whom Agent Welch identified in court as Corral–Gastelum, was pointing a shining, metallic object in his direction. As soon as Agent Welch turned on his flashlight and identified himself, Corral–Gastelum threw the object—a silver handgun—on the ground.

Agent Welch arrested Corral–Gastelum. One of the agents called for backup, and Agents Timmerman and Rush soon arrived, followed by a helicopter. The helicopter quickly located the three people who had fled southward, and those three were arrested by agents on the ground; the fifth person was never found. As Agents Rush, Martin, and Welch moved along the wash towards the helicopter, they discovered seven duffel bags containing 216.1 pounds of marijuana. The precise distance between the bags of marijuana and the point of Corral–Gastelum's arrest is unclear from the record. Corral–Gastelum maintains that the marijuana was discovered 110 yards from where he was arrested; the government suggests that the actual distance was a mere 30 yards.

Based on the foregoing, the government charged Corral Gastelum with conspiracy to possess marijuana with intent to distrib-

ute, possession of marijuana with intent to distribute, and use of a firearm during a drug trafficking crime. The government's case against him consisted entirely of the testimony of Agents Martin and Welch. At the conclusion of the government's case, Corral–Gastelum moved for a judgment of acquittal. The court denied the motion. The jury then convicted him on all counts. He was sentenced to 51 months on the conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana counts, to be served consecutively with 84 months on the count of using a firearm during a drug trafficking crime. This appeal followed.

## II. *Analysis*

■ Corral–Gastelum contends that the district court erred in denying his motion for judgment of acquittal made pursuant to Federal Rule of Criminal Procedure 29. In considering his claim, we must affirm the convictions if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found Corral–Gastelum guilty beyond a reasonable doubt of each element of the crimes charged. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Sanchez–Mata,* 925 F.2d 1166, 1166 (9th Cir.1991).

Although the elements of the conspiracy count and the substantive drug count are not identical, the resolution of this appeal turns on a single question: did the government establish a sufficient connection between Corral–Gastelum and the duffel bags of marijuana to support convictions for conspiracy and possession with intent to distribute, and thus for the use of a firearm while committing such offenses as well? Under this circuit's precedents, the answer is no.

■ Our opinion in *United States v. Jose Luis L.,* 978 F.2d 543 (9th Cir.1992), compels the reversal of Corral–Gastelum's

convictions.[2] In that case, the defendant and two companions were arrested a half mile away from marijuana bundles in the desert near the U.S.-Mexico border. A sock was tried to a tree ten feet from the bundles. Footprints found near the bundles matched those of the defendant and his companions, and the defendant was not wearing socks when he was arrested.

We found that the evidence was insufficient to establish possession of marijuana with intent to distribute. We explained that "the footprint evidence only establish[ed] [defendant's] presence at the marijuana cache at some point; it [did] not establish that [defendant] actually possessed or carried one of the bundles of marijuana. [Defendant] and his companions could have stumbled across the bundles after they illegally crossed the border through the desert to look for work in the United States.... No evidence supports a contrary conclusion." *Jose Luis L.*, 978 F.2d at 545. Here, the evidence linking Corral-Gastelum to the marijuana is even more attenuated than in *Jose Luis L.* The government presented no physical evidence—such as the footprint and sock evidence in *Jose Luis L.*—that would connect Corral-Gastelum (or his companions) to the marijuana. As in *Jose Luis L.*, none of the "co-conspirators" testified at Corral-Gastelum's trial, and no statements were offered that might have supported his participation in, or even the existence of, a drug smuggling conspiracy; on the basis of the record before us, Corral-Gastelum could as easily have been an alien illegally crossing the border, or even a trafficker in illegal aliens, as a drug

trafficker. In fact, the agents themselves confirmed that sensors had been placed in the Aqua Fria wash in part to detect illegal entrants.[3]

█ In denying Corral-Gastelum's motion for judgment of acquittal, the district judge pointed to evidence that he was traveling in a group; that marijuana was found close by; and that part of the group ran back in the direction of the marijuana after the agents identified themselves. The court found that those factors amounted to "strong circumstantial" evidence of the existence of a drug conspiracy and of Corral-Gastelum's "involve[ment] with" possession of marijuana. However, of those factors, only the proximity of the marijuana carries any weight here, and it is clear under circuit law that "mere proximity" to a drug is insufficient to support conviction.[4] *See, e.g. United States v. Vasquez-Chan*, 978 F.2d 546, 550 (9th Cir.1992); *Jose Luis L.*, 978 F.2d at 545; *United States v. Savinovich*, 845 F.2d 834, 837 (9th Cir.1988); *United States v. Rodriguez*, 761 F.2d 1339, 1341 (9th Cir.1985). That Corral-Gastelum was traveling with a group does not show the existence of a drug conspiracy; as previously suggested, the group could as easily have been undocumented aliens crossing the border to work in the United States. *See Jose Luis L.*, 978 F.2d at 545. The agents' testimony that shouting and rock throwing from another location were part of a plan to distract them adds little to the equation; in any event, the agents acknowledged that they never laid eyes on the person responsible for the "diversion,"

**2.** Unfortunately, *Jose Luis L.* was not cited to the district judge. We also note that it was the government that brought this dispositive case to our attention in its answering brief. We commend the Assistant United States Attorney for doing so. During argument, she ably sought to distinguish *Jose Luis L.* on the facts, but the legal principles governing that decision preclude us from accepting her argument.

**3.** Whether Corral-Gastelum may have violated any of our immigration laws is, of course,

irrelevant here; he was not charged with any such offense, and "[u]nder our system of criminal justice, even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar." *Jackson*, 443 U.S. at 323–24, 99 S.Ct. 2781.

**4.** We need not resolve the factual dispute as to the precise distance between the place of Corral-Gastelum's arrest and the duffel bags of marijuana, because we conclude that even if the government's estimate is correct, Corral-Gastelum's convictions cannot stand.

let alone linked him to Corral–Gastelum and his companions.

Finally, although the agents testified, and the district court noted, that three members of the group (not including Corral–Gastelum) fled "in the direction from where the marijuana had been left," that direction was also the direction *away* from the armed Border Patrol agents—again entirely consistent with the behavior of undocumented border-crossers. Indeed, the direction of the three individuals' flight seems as probative of innocence as of guilt: if the individuals who fled *were* aware that there were duffel bags containing marijuana, it would seem, purely as a matter of logic, that the *last* place they would run when confronted by law enforcement would be towards the vicinity of the stash.

We are left with Corral–Gastelum's brandishing of a loaded handgun just prior to his arrest, a factor that, like the others, is no more suggestive of drug trafficking than of alien smuggling. In fact, the government produced no evidence that Corral–Gastelum was not a lawful gun owner. If Corral–Gastelum's actions with respect to the handgun were unlawful regardless of the alleged drug trafficking crime, the government could have charged him with a separate weapons offense, but it chose not to do so.

Absent some additional evidence—either in the form of a statement by Corral–Gastelum, testimony from a "co-conspirator" implicating him in an offense, or physical evidence linking him to the marijuana—the government was unable to satisfy beyond a reasonable doubt the elements of either conspiracy to possess with intent to distribute or possession with intent to distribute. Because the government failed to meet its burden as to the drug trafficking counts, it follows that it did not prove beyond a reasonable doubt that Corral–Gastelum used a firearm during a drug trafficking crime.

■ The reasonable doubt standard is among the most venerable and fundamental of our constitutional protections. It "'plays a vital role in the American scheme of criminal procedure,' because it operates to give 'concrete substance' to the presumption of innocence, to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding." *Jackson,* 443 U.S. at 315, 99 S.Ct. 2781 (quoting *In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). Here, the government fell short of its duty of establishing Corral–Gastelum's guilt beyond a reasonable doubt. Accordingly, we reverse his convictions as to all counts charged.

REVERSED and REMANDED with instructions to enter judgment of acquittal.