**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

CARLOS JAVIER LOPEZ,
            *Defendant-Appellant.*

No. 06-10062

D.C. No.
CR-04-00375-RLH

OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, District Judge, Presiding

Argued and Submitted
December 5, 2006—San Francisco, California

Filed February 27, 2007

Before: Thomas G. Nelson, Ronald M. Gould, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge T.G. Nelson

**COUNSEL**

Anne R. Traum, Assistant Federal Public Defender, Las Vegas, Nevada, for the defendant-appellant.

Christina M. Brown, Assistant United States Attorney, Las Vegas, Nevada, for the plaintiff-appellee.

## OPINION

T.G. NELSON, Circuit Judge:

Carlos Lopez ("Lopez") appeals his convictions for possession of cocaine with intent to distribute (21 U.S.C. § 841(a)) and possession of a firearm in furtherance of a drug trafficking offense (18 U.S.C. § 924(c)).

Lopez contends that insufficient evidence supported his convictions under these counts because no rational jury could have found each of the essential elements of the crimes beyond a reasonable doubt. He further contends that the district court plainly erred by failing to provide the meaning of the term "in furtherance" to the jury, and that the district court abused its discretion when it denied his motion to sever his drug-related counts from the other charges. *Harris v. United States*[1] and *United States v. Dare*[2] foreclose Lopez's final claim, that the mandatory minimum sentence imposed under 18 U.S.C. § 924(c) violated his Sixth Amendment rights.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## I. BACKGROUND

The Government charged Lopez on five counts. Counts One and Two charged Lopez with being a felon and an illegal alien in possession of a firearm. Count Three charged him with possessing that same firearm in furtherance of a drug trafficking offense. Count Four charged Lopez with possession of cocaine with intent to distribute. Count Five charged him with illegal reentry. Before trial, Lopez moved to sever the firearm and illegal reentry charges from the drug-related counts. The district court denied his motion.

---

[1] 536 U.S. 545 (2002).
[2] 425 F.3d 634 (9th Cir. 2005).

At trial, one of Lopez's arresting officers testified regarding the events surrounding Lopez's arrest. The officer explained that he had responded to a 911 call placed at approximately 3:30 A.M. on August 11, 2004. The caller stated that he had observed Lopez brandish a handgun, walk into a nearby apartment complex, re-emerge, and then climb into a maroon Dodge Stratus. Shortly after responding, the testifying officer located the car and pulled up alongside it. He saw Lopez, who was in the passenger seat, lean over as if he were placing something under his seat. The officer followed the car and signaled the driver to pull over. The driver turned into a parking lot and stopped.

Lopez jumped out of the car and ran. He refused to stop despite commands to do so in both English and Spanish. The testifying officer and a back-up officer eventually cornered and subdued him. During the struggle, a "purse" fell from Lopez's pants pocket. The purse contained $2,840.25 in unorganized cash, including 63 twenty-dollar bills, and several identification cards. After running the various names on the identification cards through the police computer system, the officers learned who Lopez was and that he was a convicted felon and a previously-deported illegal alien.

When the officers asked Lopez about the large amount of cash in the purse, he offered various conflicting explanations including that he dealt in cars, painted houses, and had been gambling. He also suggested that the money belonged to his wife. Lopez was unable to provide any corroborating information. For example, he failed to provide the name of a casino where he had been gambling or an address where his wife lived. Lopez did not introduce any evidence at trial regarding the source of the money.

When the officers asked Lopez about the gun the eyewitness had observed him brandish, Lopez said in Spanish, "[i]f you don't find a gun, you got nothing on me." The officers found a gun under the passenger seat of the maroon Dodge

Stratus. They also found a canister in the center console that contained 13.15 grams of cocaine. The cocaine was divided into multiple "shaved" pieces of varying sizes. Lopez admitted that he owned the maroon Dodge Stratus, but denied that the gun or the drugs found in the car were his.

Officer Christopher Bunn from the Narcotics Bureau in the Las Vegas Metropolitan Police Department testified at the trial as an expert witness. He stated that, in his expert opinion, the drugs recovered from Lopez's car were for distribution. He based his opinion on the quantity and packaging of the cocaine, the area where the incident occurred, the cash denominations and amount, and the presence of a firearm. Officer Bunn testified that 13.15 grams amounted to 131 dosage units and that single dosage units typically sell for ten dollars. Officer Bunn further testified that twenty dollars is a very common purchase level.

With respect to the charge of possession of a firearm in furtherance of a drug trafficking offense, the district court instructed the jury as follows:

> The defendant is charged in Count Three of the indictment with possessing a firearm in furtherance of a drug trafficking crime in violation of Section 924(c)(1) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the Government must prove each of the following elements beyond a reasonable doubt:
>
> First, the defendant committed the crime of drug trafficking specified in Count Four of the indictment;
>
> Second, the defendant knowingly possessed a firearm; and
>
> Third, the defendant possessed the firearm in furtherance of the crime.

The jury instructions did not separately define the term "in furtherance" in the third element.

A jury convicted Lopez on all five counts. Lopez appeals, arguing that: (1) insufficient evidence existed to support conviction under Counts Three and Four; (2) the district court plainly erred by failing to define "in furtherance" in the jury instruction for Count Three; and (3) the district court abused its discretion when it denied his motion to sever the drug-related charges from the others.

## II. ANALYSIS

We review claims of insufficient evidence de novo.[3] Sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found each of the essential elements of the crime beyond a reasonable doubt."[4]

We review a complaint regarding jury instruction for plain error where a defendant neither proposed nor objected to a jury instruction.[5] Finally, we review the district court's denial of a motion to sever for abuse of discretion.[6]

### A. Sufficient evidence supported the jury's guilty verdict on the charge of possession of cocaine with intent to distribute.

[1] In order to convict under 21 U.S.C. § 841(a), the Gov-

---

[3] *United States v. Shipsey*, 363 F.3d 962, 971 n.8 (9th Cir. 2004) (citation omitted).

[4] *United States v. Rios*, 449 F.3d 1009, 1011 (9th Cir. 2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (internal quotation marks omitted).

[5] *United States v. Alferahin*, 433 F.3d 1148, 1154 (9th Cir. 2006).

[6] *United States v. Nguyen*, 88 F.3d 812, 815 (9th Cir. 1996) (citation omitted).

ernment must prove beyond a reasonable doubt that Lopez both knowingly possessed cocaine and that he intended to distribute it.[7] We will address each requirement in turn.

### i. Knowing Possession

[2] Mere proximity to drugs does not establish knowing possession.[8] The Government must show some link between the defendant and the drugs. Circumstantial proof of "exclusive dominion or of some special relationship to the cocaine or persons who directly control it" suffices.[9]

Several pieces of evidence link Lopez to the drugs and distinguish his case from those on which he relies. First, Lopez owned the vehicle in which officers found the cocaine. Second, the drugs were within his reach shortly before his arrest. Third, according to an expert witness, the amount of cash in Lopez's possession suggested drug dealing. Lopez's proximity to the drugs, when combined with the other evidence in the case, suggests dominion and control over the drugs. These facts also distinguish this case from *Corral-Gastelum*.[10] In that case, no such circumstantial evidence of possession existed. The only thing that linked the defendant to the drugs was his proximity to them. The defendant was arrested 30 to 110 yards from duffel bags containing marijuana.[11]

In addition, in his statement to the officers, Lopez flatly denied ownership of the drugs and never offered a credible explanation regarding his proximity to them even though the cocaine was in his car and within his reach shortly before his arrest. A jury may "consider as evidence a less than credible

---

[7]*United States v. Ocampo*, 937 F.2d 485, 488 (9th Cir. 1991).

[8]*See United States v. Corral-Gastelum*, 240 F.3d 1181, 1184 (9th Cir. 2001).

[9]*Ocampo,* 937 F.2d at 489 (citation omitted).

[10]240 F.3d 1181 (9th Cir. 2001).

[11]*Id.* at 1183.

explanation given by the defendant concerning his proximity to the contraband."[12]

[3] Lopez's ownership of the vehicle where officers found cocaine, the large amount of unorganized cash in his possession, his observed proximity to the cocaine, the ease with which he could access the cocaine, and the absence of any evidence to suggest that the drugs belonged solely to the driver of the car or to another person supported an inference that Lopez possessed the cocaine found in his car.[13]

Lopez argues that he could have been attempting to avoid the police because he feared deportation rather than prosecution for a drug crime. He further argues that the absence of his fingerprints on the canister in which the officers found the cocaine could support an inference that the drugs belonged to someone else. Although the jury could have interpreted the evidence as Lopez suggests, it did not. The inferences that it did draw were sufficiently supported by the evidence. Accordingly, we may not substitute our judgment for that of the jury.[14]

### ii. Intent to distribute

[4] Where there is "other evidence of a plan or intent to distrib-

---

[12]*United States v. Grayson*, 597 F.2d 1225, 1229 (9th Cir. 1979) (citation omitted); *see also United States v. Jose Luis L.*, 978 F.2d 543, 545 (9th Cir. 1992) (finding that defendant's proximity to a marijuana cache did not establish possession because the defendant provided a plausible explanation that his presence in the desert where the drugs were found was for the sole purpose of attempting to cross the border).

[13]*Cf. Delgado v. United States*, 327 F.2d 641, 642 (9th Cir. 1964) (finding evidence insufficient to establish possession by either of two "common law" spouses residing in the same home when officers found drugs in a night stand because evidence did not provide a rational basis for resolving the doubts as to whether one alone or both had possession).

[14]*See, e.g., Rios*, 449 F.3d at 1011 (stating that court must draw all reasonable inferences in favor of the Government).

ute,"[15] this court has held that possession of as little as four or five grams may establish an intent to distribute cocaine.[16]

**[5]** Lopez possessed far more than four or five grams. Moreover, other pieces of evidence permitted a reasonable inference that Lopez obtained the cash in his possession from drug trafficking. The evidence included: (1) inconsistent and insufficient explanations regarding the source of the cash; (2) the disorganized nature of the money; and (3) his possession of 63 twenty-dollar bills coupled with expert testimony that twenty dollars was a common purchase level. Furthermore, Lopez's ownership of the vehicle in which officers found distributable quantities of cocaine in divided pieces also supported an inference that Lopez intended to distribute the cocaine in his possession. The record supports the jury's finding that Lopez intended to distribute cocaine.

**[6]** The Government introduced sufficient evidence from which a reasonable jury could infer that Lopez both knowingly possessed cocaine and intended to distribute it. We therefore affirm Lopez's conviction under 21 U.S.C. § 841(a).

**B.    Sufficient evidence supported the jury's guilty verdict on the charge of possession of a firearm in furtherance of a drug trafficking offense.**

Lopez argues that the Government failed to introduce evidence from which a rational jury could determine beyond a

---

[15]*United States v. Ramirez*, 608 F.2d 1261, 1264 (9th Cir. 1979) (holding that defendant's sharing of cocaine with his two companions established intent to distribute even absent evidence of commercial distribution).

[16]*Id.* (citing evidence that a typical dose of cocaine can be as little as one-fourth of a gram as sufficient for a reasonable jury to conclude that five grams in defendant's possession was a distributable amount).

reasonable doubt that he possessed a firearm "in furtherance" of a drug trafficking crime.[17] His argument fails.

[7] To establish that Lopez possessed the firearm "in furtherance" of his drug crime, the Government must show that Lopez intended to use the firearm to promote or to facilitate his possession of cocaine with intent to distribute.[18] While the Government need not show actual use of the firearm to advance the drug crime, mere possession of the gun is not enough.[19] In addition to possession, the Government must demonstrate a nexus between the gun discovered and the underlying offense.[20] This court has held that a sufficient nexus exists if the firearm was "readily accessible" during the commission of the drug crime.[21]

[8] Because Lopez's drug crime was possession of cocaine with intent to distribute, evidence establishing the ready accessibility of the gun while he was in possession of a distributable amount of cocaine satisfied the "in furtherance" requirement. The Government satisfied its burden when it

---

[17]In order to convict under 18 U.S.C. § 924(c), the Government must prove that Lopez: (1) possessed cocaine with intent to distribute; (2) possessed a firearm; and (3) possessed that firearm "in furtherance" of his drug crime. *Rios*, 449 F.3d at 1012. In the previous section, we affirmed the district court's finding that Lopez possessed cocaine with intent to distribute. Thus, we resolved the first prong. Additionally, Lopez does not argue that the Government presented insufficient evidence to establish that he possessed a firearm. Thus, the second prong is not at issue.

[18]*Rios*, 449 F.3d at 1012.

[19]*Id.* at 1014 (discovery of sawed-off shotgun at defendant's residence where no drugs were found at residence did not establish that defendant possessed a firearm in furtherance of a drug crime despite expert testimony that drug traffickers often use firearms to further their drug crimes); *see also United States v. Mann*, 389 F.3d 869, 880 (9th Cir. 2004) (defendant's possession of a firearm at a drug trafficking crime scene insufficient to convict where firearm was in a locked safe inside of a parked truck).

[20]*Rios,* 449 F.3d at 1014.

[21]*See id.* at 1016.

presented evidence at trial that both the canister of cocaine and the firearm were easily within Lopez's reach at the time when the officer pulled over Lopez's car.

**[9]** We affirm Lopez's conviction for possession of a firearm in furtherance of a drug trafficking offense.

### C. The district court properly instructed the jury on the meaning of "in furtherance."

The district court did not err, much less plainly err, by failing separately to define "in furtherance" in its instruction to the jury on possession of a firearm in furtherance of a drug trafficking offense. To the extent any ambiguity in the definition of "in furtherance" exists, it benefitted Lopez.

**[10]** Lopez argues that absent a separate definition of "in furtherance," the jury could have convicted him upon finding mere possession of one firearm. His argument fails. The instruction separately listed the requirements that "the defendant knowingly possessed a firearm" and that "the defendant possessed the firearm in furtherance of the crime." Thus the instruction clearly delineated between mere possession and possession "in furtherance." Additionally, "in furtherance is a phrase of general use that naturally connotes more than mere possession . . . ."[22] The instruction as given eliminated the possibility that a rational juror would equate mere possession of a firearm with possession of a firearm "in furtherance" of a drug crime. We affirm.

---

[22]*United States v. Robinson*, 435 F.3d 1244, 1250 (10th Cir. 2006) (internal quotation marks omitted); *see also* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 509 (11th ed. 2003) (defining "furtherance" as "the act of furthering; advancement").

**D.   The district court did not abuse its discretion when it denied Lopez's motion to sever the drug-related counts from the other charges.**

[11] The district court did not abuse its discretion when it denied Lopez's motion to sever certain counts. Joinder was not "so manifestly prejudicial that it outweigh[ed] the dominant concern with judicial economy and compel[led] the exercise of the court's discretion to sever."[23] The jury's knowledge of Lopez's status as a felon and a deported alien was not manifestly prejudicial.[24] Furthermore, the evidence regarding each of the charges against Lopez was extensively interrelated, and thus reasonably consolidated into one trial.

[12] Lopez admits that there was no testimony on the issue of his status as a felon because he stipulated to that fact. This prior felony stipulation and the strength of the evidence distinguish Lopez's case from *Lewis*.[25] In *Lewis*, this court reversed a district court's denial of the defendant's motion to sever. Several factors in *Lewis* led to the court's reversal. First, evidence in support of the defendant's killing charge was sparse.[26] Second, the district court permitted otherwise improper testimony and prosecutorial argument regarding the defendant's prior felony conviction and the fact that he had lied under oath.[27] None of these factors exist in this case. Here, the evidence supporting Lopez's convictions, particularly his convictions related to firearm possession, was strong.

*United States v. VonWillie*[28] provides a more apt compari-

---

[23]*United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976).

[24]*See United States v. Lewis*, 787 F.2d 1318, 1321, *as amended by* 798 F.2d 1250 (9th Cir. 1986) (defining "manifestly prejudicial" as "of such magnitude that the defendant's right to a fair trial was abridged").

[25]787 F.2d at 1323.

[26]*Id*. at 1321.

[27]*Id*. at 1322-23.

[28]59 F.3d 922 (9th Cir. 1995).

son. In *VonWillie*, a jury convicted the defendant on charges of being a felon in possession of a firearm and of use of a firearm in relation to a drug trafficking offense.[29] As in Lopez's case, the prosecution stipulated to the prior felony conviction and the trial court gave a limiting instruction to the jury.[30] This court concluded that the district court did not abuse its discretion by denying the defendant's motion to sever.[31]

[13] No law supports Lopez's contention that the jury's knowledge that he was an illegal alien created "prejudice of such magnitude that the defendant's right to a fair trial [was] abridged."[32] Unlike evidence of a prior felony conviction, relevant evidence that a person is a previously-deported illegal alien is admissible.[33]

[14] Furthermore, concerns of judicial economy strongly supported the denial of the motion to sever in this case. Each of the alleged offenses arose from the same act or transaction,[34] and there was significant overlap in the evidence for all charges. Counts One, Two, and Three each required the Government to prove that Lopez possessed a firearm. Counts Three and Four each required the Government to prove that Lopez possessed cocaine with an intent to distribute. Counts Two and Five each required the Government to prove that Lopez was an illegal alien. Thus, separating any charge from the others would have necessarily resulted in a duplicative presentation of evidence. The burden on judicial resources that would have resulted from hearing the charges and evidence against Lopez in multiple trials outweighs any limited

---

[29]*Id.* at 924.

[30]*Id.* at 930.

[31]*Id.*

[32]*Lewis,* 787 F.2d at 1322.

[33]*See* Fed. R. Evid. 402.

[34]*See* FED. R. CRIM. P. 8(a) (permitting joinder of multiple offenses if the offenses "are of the same or similar character, or are based on the same act or transaction . . . .").

prejudice that Lopez may have experienced.[35] We affirm the district court's denial of Lopez's motion to sever counts.

## III.   CONCLUSION

Sufficient evidence supported Lopez's convictions for possession of cocaine with intent to distribute and for possession of a firearm in furtherance of a drug trafficking offense. Additionally, the district court's jury instruction, which did not separately define "in furtherance," was proper. Any ambiguity in the instruction as given benefitted Lopez. Finally, the district court did not abuse its discretion when it denied Lopez's motion to sever the firearm possession and illegal reentry charges from the drug-related counts. The charges were extensively interrelated and reasonably presented in a consolidated trial in the absence of manifest prejudice to Lopez.

AFFIRMED.

---

[35]*See Brashier*, 548 F.2d at 1323.