NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

AUG 20 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-30067 |
| Plaintiff-Appellee, | D.C. No. 4:16-cr-06033-EFS-1 |
| v. | |
| MILES BARTON NICHOLS, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted July 10, 2019
Seattle, Washington

Before: BERZON and WATFORD, Circuit Judges, and ROTHSTEIN,[**] District Judge.

## I.    INTRODUCTION

In October 2017, Defendant-Appellant Miles Nichols was tried for and

convicted of: (1) possession with intent to distribute five grams or more of

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Barbara Jacobs Rothstein, United States District Judge for the Western District of Washington, sitting by designation.

methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii) (Count One); (2) possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) (Count Two); (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three); and (4) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Four).

In this appeal, Nichols challenges four decisions of the district court: (1) denial of a motion to suppress evidence or, in the alternative, denial of an evidentiary hearing on the reliability of a witness statement included in a search warrant affidavit; (2) denial of his motion *in limine* to exclude the government's expert witness on drug trafficking *modus operandi*; (3) denial of his request for a jury instruction on the lesser included offense of simple possession; and (4) submitting to the jury a supplemental instruction on the definition of "in furtherance of," with respect to the charge of possession of a firearm in furtherance of a drug trafficking offense. This court has jurisdiction pursuant to 28 U.S.C. §1291.

## II.    FACTUAL BACKGROUND

In December 2015, police officers were surveilling the M Hotel in Richland, Washington, an establishment known for recent criminal activity, and observed a woman—later identified as Crystal Bowen—knock on the door to Room Number

2

Nichols, already known to the officers for suspected drug activity, let her in. Only a few minutes later, Bowen left the room. The officers then made contact with Nichols, who declined to allow them to search the hotel room. Nichols also gave the officers the name of the woman who had just left his room, giving a name that the officers later deemed to be false.

On further investigation, the officers were able to identify Bowen from a booking photo. The officers ascertained there was an outstanding arrest warrant for Bowen, located her, and placed her under arrest. In an interview immediately after the arrest, Bowen confirmed that she had just been at the M Hotel, as the officers had observed. She further admitted she had just purchased $50 of methamphetamine from Nichols and had purchased methamphetamine from Nichols in the past.

Based on Bowen's statement and the officers' observations at the M Hotel, the officers telephonically applied for and were granted a warrant to search Nichols' room at the M Hotel. During the search, officers discovered approximately 29 grams of methamphetamine, drug paraphernalia, a digital scale, ledger paperwork, packaging materials, and two handguns, one found under the mattress and one in the nightstand next to the bed. Nichols was not present.

The officers subsequently located Nichols at a Days Inn in Kennewick, Washington, and took him into custody. During a recorded interview, Nichols

admitted owning the firearms that were recovered at the M Hotel. He also told the officers that there were three ounces of methamphetamine in the nightstand drawer at the Days Inn; and said he sold an average of two pounds of methamphetamine a week.

Officers subsequently obtained another search warrant, this time to search Nichols' room at the Days Inn. Upon executing the warrant, the officers discovered approximately 3.5 ounces of methamphetamine, drug paraphernalia, packaging material, ledger paperwork, and currency.

## III. DISCUSSION

### A. Motion to Suppress Evidence or for *Franks* Hearing

Nichols filed a pretrial motion to suppress evidence seized pursuant to the first search warrant, and the additional evidence, subsequently obtained, as fruit of the poisonous tree. In the alternative, he requested an evidentiary hearing into circumstances surrounding the first search warrant under *Franks v. Delaware*, 438 U.S. 154 (1978).[1]

In support of his motion, Nichols argued that the officer seeking the warrant

---

[1] In *Franks*, the Supreme Court held that the Fourth Amendment requires an evidentiary hearing at the defendant's request on the validity of an affidavit underlying a search warrant "[1] where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [2] if the allegedly false statement is necessary to the finding of probable cause." 438 U.S. at 155–56.

intentionally or recklessly omitted from the warrant affidavit the fact that Bowen had six months earlier, in an unrelated matter, pleaded guilty to making a false statement to a public officer. The circumstances of that conviction were that Bowen told a police officer that a man the police were looking for was not in the house with her, when in fact he was. The district court denied Nichols' motion.

On appeal, Nichols claims that the omission of information related to Bowen's conviction was misleading, and that the omission was reckless or deliberate. He claims that the officers must have known that Bowen had been convicted of providing a false statement, as the outstanding warrant on which the officers arrested Bowen "stemmed from" the conviction and asserts that experienced narcotics officers would have known that Bowen's conviction was material to the magistrate's evaluation of probable cause.

We review the district court's denial of the motion to suppress or hold a *Franks* hearing *de novo*. *See United States v. McTiernan,* 695 F.3d 882, 887 (9th Cir. 2012); *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). Whether false statements or omissions are intentional or reckless is a factual finding reviewed under the clearly erroneous standard. *United States v. Dozier*, 844 F.2d 701, 705 (9th Cir. 1988). We affirm the district court's denial of the motion for a *Franks* hearing, on two alternate and independently sufficient grounds.

First, Nichols has failed to meet the first requirement for a *Franks* hearing,

5

which requires a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155–56. It was not clear error for the district court to find that there was "no evidence" that the officers had actual knowledge of Bowen's conviction for making a false statement, or that "there is insufficient evidence of reckless disregard for the truth."

Second, Nichols failed to establish that the alleged omission was material to the magistrate's probable cause determination, the second requirement for a *Franks* hearing. In this regard, several factors bolstered Bowen's reliability, all of which were shared with the issuing magistrate: (1) Nichols' prior convictions for multiple drug offenses; (2) the self-incriminating nature of Bowen's confession that she had just purchased methamphetamine; (3) the officers' observations at the M Hotel; and (4) Nichols' failure to name Crystal Bowen as the woman they had observed most recently leaving his room, which the officers believed had been a deliberate lie. Taken together, the information presented to the magistrate was sufficient to establish probable cause justifying the warrant.

For this reason, we also affirm the district court's finding that the search warrant was supported by probable cause, and its denial of the motion to suppress. We review a probable cause determination for clear error and "will not find a search warrant invalid if the magistrate judge had a 'substantial basis' for

6

concluding that the supporting affidavit established probable cause.'" *Reeves*, 210 F.3d at 1046, *citing United States v. Clark*, 31 F.3d 831, 834 (9th Cir.1994). As noted above, the officers gave the magistrate ample information corroborating Bowen's statements. Under these circumstances, the district court correctly concluded that the magistrate had a substantial basis for finding probable cause justifying the warrant.

B.     The Trial Court's Admission of Government's *Modus Operandi* Expert Witness Was Not an Abuse of Discretion

We also affirm the trial court's denial of Nichols' motion to exclude testimony of the government's expert witness, who testified to the *modus operandi* of drug traffickers. As a general matter, this court has repeatedly upheld such testimony. *See, e.g.*, *United States v. Anchrum*, 590 F.3d 795, 804 (9th Cir. 2009) ("Law enforcement experts may 'testify as to the general practices of criminals to establish the defendants' modus operandi' which 'helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior.'"); *United States v. Freeman*, 498 F.3d 893, 906 (9th Cir. 2007) ("Government experts may 'testify as to the general practices of criminals to establish the defendants' modus operandi.'").

Furthermore, the expert witness here did not, as Nichols argues, violate Federal Rule of Evidence 704(b), which prohibits an expert from opining whether

7

a defendant did or did not have a mental state constituting an element of the crime charged. The expert avoided any commentary on Nichols' actual mental state. Instead, the expert testified in response to several hypotheticals posed by the prosecution. He stated that, in his experience, the amount of methamphetamine recovered from Nichols' hotel rooms was "consistent with what is up for distribution." This court has upheld similar testimony in the past. *See, e.g.*, <u>United States v. Hayat</u>, 710 F.3d 875, 901 (9th Cir. 2013). Such testimony is allowed "so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony." *Id.* (quoting *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997)).

Finally, Nichols challenges the reliability of the expert's dosage estimates for amounts of methamphetamine typically possessed for personal use as opposed to distribution. Nichols offers no evidence demonstrating that the expert's estimate was incorrect; only that it was "incredibly conservative" and different than estimates given in other cases. Nichols fails to cite any cases holding that an expert's opinion is unreliable and should be excluded merely because it differs from other expert opinions. The district court properly allowed the testimony.

C.    The Trial Court's Denial of Defendant's Request for a Jury Instruction on Lesser Included Offense Was Not an Abuse of Discretion

To be entitled to an instruction on a lesser included offense, a defendant

must establish that, given the evidence produced at trial, a rational jury could find the defendant guilty of the lesser offense, yet acquit him of the greater. *Schmuck v. United States*, 489 U.S. 705, 716 n. 8, 109 (1989), *citing Keeble v. United States*, 412 U.S. 205, 208 (1973). Nichols argues that a rational jury could have acquitted him of possession with intent to distribute and convicted him of the lesser included offense of simple possession. He claims that the amounts recovered in each hotel room—approximately 29 grams and 94 grams, respectively—were small enough that a rational jury could have discounted the testimony of the government's expert as to usage doses, and rationally concluded that the amounts were intended for personal use only.

Nichols' argument fails to account for the substantial and mostly uncontroverted evidence corroborating an intent to distribute. In addition to the large quantities of methamphetamine recovered from the hotel rooms, the evidence included Nichols' confession, observations of the officers surveilling the M Hotel, the testimony of witnesses, and the drug trafficking paraphernalia recovered from Nichols' rooms. Under these circumstances, it was entirely within the trial court's discretion to refuse to give an instruction for simple possession. *See United States v. Vaandering*, 50 F.3d 696, 703 (9th Cir. 1995) ("[T]he district court may refuse to give an instruction on simple possession where there is a large quantity of a drug and other evidence tending to establish distribution.").

D. The Supplemental Instruction on "In Furtherance" Was a Correct Statement of the Law

Finally, Nichols challenges the district court's supplemental jury instruction on the definition of "in furtherance" as it related to Count III, being in possession of a firearm in furtherance of a drug trafficking crime. In response to a request for clarification of the phrase from the jury, the trial court stated:

> In furtherance of means there must be a connection between the firearm and the defendant's possession of methamphetamine with intent to distribute. In determining whether a firearm was possessed in furtherance of possession of methamphetamine with intent to distribute, you may consider the totality of the circumstances, including the proximity, accessibility, and strategic location of the firearm as part of the defendant's possession of a distribution amount of methamphetamine.

Nichols first argues that the definition does not adequately convey that the firearm must have played some part in furthering the drug crime, and would have allowed the jury to convict him under Count III for merely possessing the firearm. This argument fails because as we have previously noted, "in furtherance is a phrase of general use that naturally connotes more than mere possession." *United States v. Lopez*, 477 F.3d 1110, 1115–16 (9th Cir. 2007). As such, the definition given more than adequately conveyed the requisite "in furtherance" element of the crime. *Id*.

Nichols also argues that in enumerating several factors that a jury could consider, the district court listed only those factors—"proximity, accessibility, and

10

strategic location of the firearm"—weighing in favor of the government's case, and not other factors that could have been exculpatory. But "[j]ury instructions need not be perfect to withstand challenge on appeal. The proper inquiry is whether, considering the charge as a whole, the trial court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." *Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir. 1991).

The trial court's supplemental instruction, in concert with the primary instructions, met this standard. Most apparently, it correctly stated the law; this Court has repeatedly upheld convictions in cases in which the only indicium of a firearm being used "in furtherance of" the drug crime was the strategic location or accessibility of that firearm to the business of drug trafficking. *See, e.g., United States v. Mahan*, 586 F.3d 1185, 1188 (9th Cir. 2009) ("When guns are located within strategic reach of a dealer such that they can use the guns to protect their illicit trade or the proceeds thereof, then a defendant's possession would typically be characterized as 'in furtherance of' the drug crime."); *Lopez*, 477 F.3d at 1115 ("Because Lopez's drug crime was possession of cocaine with intent to distribute, evidence establishing the ready accessibility of the gun while he was in possession of a distributable amount of cocaine satisfied the 'in furtherance' requirement.").

Moreover, the instruction was not misleading. The district court did not instruct the jury that it could consider only the proximity, access, and strategic

11

location of the firearms—to the contrary, it explicitly said the jury "may consider the totality of the circumstances." The supplemental instruction did not constitute error.

**AFFIRMED**[2].

---

[2] Appellee's motion to submit case on briefs, docket 51, is denied as moot.

*United States v. Miles Nichols*, **No. 18-30067**

BERZON, Circuit Judge, concurring:

I agree with the majority disposition except for the following: In my view, the district court erred by providing the jury with an inaccurate definition of the term "in furtherance" contained in 18 U.S.C. § 924(c)(1)(A). I concur in affirming the conviction, however, because the instructional error was ultimately harmless.

**1.** As to the offense's "in furtherance" element, the district court's proposed final jury instruction read: "The defendant possessed the firearm or firearms in furtherance of the crime of possession with intent to distribute methamphetamine." Nichols asked for a specific instruction defining "in furtherance." He proposed the following language, which he took from the Modern Federal Jury Instructions:

> *To possess a firearm in furtherance of the crime means that the firearm helped forward, advance or promote the commission of the other crime.* The mere possession or presence of the firearm at the scene of the crime is not sufficient under this definition. The firearm must have played some part in furthering the crime in order for this element to be satisfied. Possession in furtherance requires that the possession be incident to and an essential part of the crime. To be convinced beyond a reasonable doubt of this element, you need to find some specific nexus between the drug offense and the firearm.

(emphasis added). His request was denied.

Nichols objected to the refusal to give his proffered instruction. He thought it imperative that the jury be provided with a substantive definition of "in

1

furtherance," as he regarded the "term [a]s vague, and . . . invit[ing] the jury to come back with a question on what [it] means."

As Nichols predicted, the jury sent a note during deliberation requesting a supplemental instruction as to the definition of "in furtherance." The court then defined the term, with the following exchange occurring between the court and jury:

> THE COURT: "In furtherance" means there must be a connection between the firearm(s) and defendant's possession of methamphetamine with intent to distribute. In determining whether a firearm was possessed in furtherance of possession of methamphetamine with intent to distribute, you may consider the totality of the circumstances, including the proximity, accessibility, and strategic location of the firearm(s) as part of the defendant's possession of a distributable amount of methamphetamine.
> JURY MEMBER: I'm sorry. That's as clear as mud to me. Can you expound on that at all?
> THE COURT: No. I think if you just -- if you just take some time and just talk about it, I think it will be helpful to you. So I don't think I can read it again, but I suspect by interacting and dialoguing, like you do with all the instructions, a group-think on this subject will be helpful to each of you.

The jury did not ask for further clarification. It later found Nichols guilty of possession of a firearm in furtherance of a drug trafficking crime.

**2.** The district court's supplemental instruction provided the jury with an affirmatively inaccurate definition of "in furtherance" and so misstated the law. As a matter of plain language, "in furtherance" is not equivalent to *any* connection between drug possession for purpose of distribution and firearms. And our case

2

law so recognizes, specifying that "in furtherance" includes a purpose or intent component.

In *United States v. Lopez*, for example, the "in furtherance" element was defined as "intend[ing] to use [a] firearm to promote or to facilitate" a drug trafficking crime. 477 F.3d 1110, 1115 (9th Cir. 2007). *United States v. Krouse*, adopting a House Judiciary Committee report's definition of the element, similarly explained that "[t]he government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense." 370 F.3d 965, 967 (9th Cir. 2004) (quoting H.R. Rep. No. 105–344 (1997), 1997 WL 668339, at *12).

In each case, we required something more than just an amorphous "connection" between the firearm and the drug trafficking crime—a purpose to facilitate, promote, or advance the commission of a drug trafficking crime was needed. And for good reason. Defining "in furtherance" solely as a "connection" or "nexus" between the firearm and drug trafficking crime, as the district court did, would capture conduct not meant to be criminal under § 924(c)(1)(A). Such a vague definition, for example, could result in a defendant being convicted under the statute if a firearm was accidentally left by a person purchasing drugs from him or her. Without our circuit's tailored definition, which requires the defendant's actual "inten[t] to use the firearm to promote or to facilitate" the drug trafficking

crime, *see Lopez*, 477 F.3d at 1115, such happenstance could result in a conviction under § 924(c)(1)(A).

Rejecting this conclusion, the majority focuses its inquiry concerning the validity of the "in furtherance" instruction on whether the court properly declined to include mere possession language in its supplemental instruction. The majority concludes that, because "in furtherance is a phrase of general use that naturally connotes more than mere possession," the court's instruction was proper. **Maj. Op. at 10.** In narrowing its inquiry in that manner, the majority misses the point. The district court's definition is not *incorrect* because it did not include mere possession language (although such language might have been quite useful to the jury); it is incorrect because the court improperly defined "in furtherance" as requiring only some "connection" between the firearm and drug trafficking crime. That definition conflicts with the statutory language and our case law, which requires not *any* connection but a certain kind of connection.

Furthermore, contrary to the majority's suggestion, the rest of the district court's supplemental instruction does not correct the mistake. The instruction's second sentence enumerates the evidence that may prove "in furtherance," such as the "proximity, accessibility, and strategic location of the firearm(s)." It does not correct the previous misstatement of the definition or clarify what "in furtherance" actually means.

4

In sum, despite the clear guidance from our case law, the district court provided the jury with a definition that was "as clear as mud," as one juror aptly characterized it. By doing so, the district court erred.

**3.** Where a district court gives an erroneous jury instruction, we must consider whether the error was harmless. "An error in describing an element of the offense in a jury instruction is harmless only if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *United States v. Liu*, 731 F.3d 982, 992 (9th Cir. 2013) (internal citation omitted). I believe that standard is met here, so I concur in the judgment as a whole rather than dissent.

The police officers recovered 29 grams of methamphetamine from a nightstand drawer in Nichols' hotel room in the M Hotel, as well as other drug paraphernalia in the room indicating distribution of drugs. They also found two loaded handguns, one under the left side of the mattress near the same nightstand and the other inside that nightstand. The very close proximity, accessibility, and strategic location of loaded firearms to a distributable quantity of methamphetamine recovered demonstrates beyond a reasonable doubt that the firearms were kept "in furtherance" of a drug trafficking crime. Given their locations, the firearms provided protection against theft of drugs or violence during drug transactions, as well as a

5

means of enforcing payment. The district court's error was therefore harmless.

In short, I concur in affirming the conviction but would hold erroneous the "in furtherance" instruction given.