**UNITED STATES of America,
Plaintiff,**

v.

**Roque S. NORITA and Julita
A. Sablan, Defendants.**

**Criminal No. 09–00026.**

United States District Court,
D. Northern Mariana Islands.

March 29, 2010.

James J. Benedetto, U.S. Department of Justice, Saipan, MP, for Plaintiff.

Bruce L. Berline, Law Office of Bruce Berline, Saipan, MP, for Defendants.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' PRETRIAL MOTIONS

MARK W. BENNETT, District Judge.

TABLE OF CONTENTS

I. INTRODUCTION ...................................................1059
 A. The Indictment ................................................1059
 B. The Defendants' Pretrial Motions ...............................1060

II. LEGAL ANALYSIS .................................................1060
 A. The Motions For Discovery Sanctions For Non–Compliance With Prior
 Orders .....................................................1060
 1. Background ...............................................1060
 2. Arguments of the parties...................................1062
 3. Applicable standards ......................................1064
 4. Analysis .................................................1065
 a. The Laboratory Operations Manual........................1065
 b. The DEA Agent's Field Manual ..........................1067
 c. Informant information ..................................1067
 d. Confidentiality ........................................1068
 5. Conclusion...............................................1069
 B. The Motion For Sanctions For Failure To Provide Adequate Expert
 Witness Summaries ..........................................1069
 1. Background ...............................................1069
 2. Arguments of the parties...................................1070
 3. Analysis .................................................1070
 C. The Motion To Sever.........................................1072
 1. Arguments of the parties...................................1072
 2. Analysis .................................................1073
 D. The Motion For Appointment Of Counsel .......................1076
 1. Arguments of the parties...................................1076
 2. Analysis .................................................1077

III. CONCLUSION ....................................................1078

In this criminal case, involving charges of trafficking in methamphetamine against both defendants and a gun charge against one defendant, the defendants have filed pretrial motions for discovery sanctions against the prosecution. One defendant

has also filed a motion to sever the gun charge against the other defendant for separate trial and a motion for appointment of her retained counsel pursuant to the Criminal Justice Act. The prosecution resists these motions.

## I. INTRODUCTION

### A. The Indictment

In a Second Superseding Indictment (docket no. 81), handed down February 25, 2010, defendants Roque S. Norita and Julita A. Sablan were charged with the following offenses:

**Count 1** charges that, from a date unknown, but on or about August of 2008, and continuing through about July 28, 2009, defendants Norita and Sablan conspired, with each other and with others known and unknown to the Grand Jury, to distribute methamphetamine and to possess methamphetamine, that is, methamphetamine hydrochloride and d-methamphetamine hydrochloride ("ice"), with intent to distribute it, all in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2;

**Count 2** charges that, on or about February 19, 2009, defendants Norita and Sablan knowingly and intentionally possessed 0.050 net grams of methamphetamine hydrochloride, with intent to distribute it, and, at the time, defendant Norita was within 1,000 feet of a school, namely the Gregorio T. Camacho Elementary School in San Roque Village, all in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), 860(a) and (b), 18 U.S.C. § 2, and *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946);

**Count 3** charges that, on or about February 19, 2009, defendants Norita and Sablan knowingly and intentionally possessed 0.062 net grams of methamphetamine hydrochloride, with intent to distribute it,

and, at the time, defendant Norita was on premises on which an individual under the age of 18 years resided, all in violation of 21 U.S.C. §§ 860a, 18 U.S.C. § 2, and *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946);

**Count 4** charges that, on or about February 25, 2009, defendant Sablan knowingly and intentionally possessed 1.1 actual grams of d-methamphetamine hydrochloride ("ice"), with intent to distribute it, and, at the time, defendant Sablan was within 1,000 feet of a school, namely Tanapag Elementary School, and was also on premises on which an individual under the age of 18 years resided, all in violation of 21 U.S.C. §§ 860(a) and (b), 860a, and 841(b)(1)(C);

**Count 5** charges that, on or about July 27, 2009, defendant Sablan knowingly and intentionally possessed 0.11 actual grams of d-methamphetamine hydrochloride ("ice"), with intent to distribute it, and, at the time, defendant Sablan was at Candi Poker in Tanapag Village, within 1,000 feet of a school, namely Tanapag Elementary School, all in violation of 21 U.S.C. §§ 860(a) and (b), and 841(b)(1)(C);

**Count 6** charges that, on or about July 28, 2009, defendant Sablan knowingly and intentionally possessed 0.070 net grams of methamphetamine hydrochloride, with intent to distribute it, at Banana Beach in Tanapag Village, all in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C);

and **Count 7** charges that, on or about March or April of 2009, defendant Norita, during and in relation to a drug-trafficking crime, knowingly used a firearm, namely a .223 caliber Armalite Model M15A2 rifle, serial number US48714, by trading it for methamphetamine, all in violation of 18 U.S.C. § 924(c)(1)(A).

These charges against Norita and Sablan are set for a jury trial before the

undersigned, as a visiting judge, beginning on April 12, 2010.

### B. The Defendants' Pretrial Motions

After a telephonic status conference on March 3, 2010, *see* Hearing Minutes (docket no. 85), the court entered a Scheduling And Trial Management Order For Jury Trial (docket no. 86) on March 4, 2010, setting a deadline of March 11, 2010, for the defendants' pretrial motions, with the exception of motions in limine,[1] and a deadline of March 25, 2010, for any responses by the prosecution. The defendants filed various motions by the March 11, 2010, deadline.

Specifically, defendant Sablan filed the following motions (Notice Of Motions, docket no. 88):(1) a motion for discovery sanctions (brief, docket no. 89); (2) a motion to suppress evidence (brief, docket no. 90); (3) a motion to sever **Count 7** (brief, docket no. 91); and (4) a motion for CJA appointment (brief, docket no. 92; financial affidavit, docket no. 97), all supported by a declaration of counsel and exhibits (docket no. 93). Defendant Norita filed (1) a motion for sanctions for failing to disclose discovery previously ordered (docket no. 94; declaration of counsel and exhibits, docket no. 95), and (2) a motion for sanctions for failing to disclose adequate written expert witness summaries (docket no. 96). On March 14, 2010, defendant Sablan filed a joinder (docket no. 98) in defendant Norita's motions for discovery sanctions (docket nos. 94 and 96), and on March 15, 2010, defendant Norita filed a joinder (docket no. 99), joining in defendant Sablan's motion for discovery sanctions (brief, docket no. 89). All but defendant Sablan's motion to suppress will be resolved by this order.

On March 16, 2010, the prosecution filed an Amended Notice Of Intent To Present Expert Testimony (docket no. 100), apparently in response to defendant Norita's motion for sanctions for failing to disclose adequate written expert witness summaries (docket no. 96). On March 25, 2010, the prosecution also filed resistances to the defendants' pretrial motions (docket nos. 105–110). On March 26, 2010, Defendant Sablan filed replies (docket nos. 116, 119, 120) in further support of her motions for discovery sanctions, to sever **Count 7,** and for CJA appointment.

## II. LEGAL ANALYSIS

The court will resolve in turn the defendants' pretrial motions or groups of motions, based on similar subject matter and joinders.

### A. The Motions For Discovery Sanctions For Non–Compliance With Prior Orders

Defendants Norita and Sablan have both filed and joined in each other's motions for discovery sanctions (notice of motions, docket no. 88, and brief, docket no. 89; docket no. 94) concerning the prosecution's purported failure to comply with prior orders requiring disclosure of sections of the DEA Laboratory Operations Manual applicable to the testing of methamphetamine and d-methamphetamine hydrochloride, sections of the DEA Agent's Field Manual pertaining to use of confidential informants, and information regarding the government's confidential informants.

### 1. Background

On December 8, 2009, in the pertinent part of a ruling on the defendants' prior

---

**1.** The defendants' deadline for motions in limine was March 17, 2010, but no timely

motions in limine were filed.

discovery motions and motions to compel, the court ordered as follows:

1. The Government shall disclose agent notes of its contact with the cooperating witnesses, as well as the cooperating witnesses' criminal histories, information concerning any plea agreements, payments, benefits or other compensation or consideration given or promised to the cooperating witnesses in exchange for their cooperation, on or before December 21, 2009.

\* \* \*

10. The Government shall obtain the section of the Laboratory Operations Manual applicable to the testing of methamphetamine and d-methamphetamine hydrochloride and promptly produce it to the defense.

11. The Government shall obtain the section of the DEA Agent's Field Manual pertaining to the use of confidential informants and shall promptly produce it to the defense.

Order on Defendants' Discovery Motions and Defendants' Motions to Compel (docket no. 45), 1–3.

On January 22, 2010, in the pertinent part of another ruling on pretrial motions, the court ruled as follows:

### I. Motion for Reconsideration.

The United States of America asks the Court to reconsider its previous order that the government produce a copy of the "Laboratory Operations Manual applicable to the testing of methamphetamine and d-methamphetamine hydrochloride" and "the sections of the DEA Agent's Field Manual pertaining to the use of confidential informants." (*See* Order on Defendants' Discovery Motions, 12/08/2009.) Federal Rule of Criminal Procedure 16(a)(1)(E) provides that "Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense, . . . ." The government urges the court to reconsider its ruling because the laboratory manual and the agent manual are not material to the defense, the material may be privileged, and Defendant may be able to access the manual through other means. The Court is not convinced that the manuals are irrelevant, that they are privileged or that they are accessible to the public. Accordingly, the motion for reconsideration is DENIED and the information shall be produced as ordered in the Court's previous order.

Order Denying The Government's Motion For Reconsideration, Denying Defendants' Motions For A Bill Of Particulars, Denying In Part And Granting In Part Defendants' Motions To Dismiss, And Granting Defendants' Motion To Sever (docket no. 80), 2–3.

Despite having twice been ordered to produce the sections of the manuals in question, the defendants contend that the prosecution has not done so, or has not done so adequately and completely. On February 19, 2010, the prosecution provided the following response by e-mail to counsel for both defendants:

Attached to this letter is a Declaration of Elizabeth Pascual, which contains the information from the DEA Laboratory Operations Manual (LOM) responsive to the Court's Order. Please be advised that I [the undersigned prosecutor] have not been provided a copy of the LOM or any portion of it; I have simply passed

on to you what was provided to my office. We should be able to produce the Field Agents Manual documents some time next week.

Declaration Of Counsel For Defendant Sablan Supporting Pretrial Motions (docket no. 93), Exhibit A; Declaration Of [Counsel] In Support Of Defendant Roque Norita's Motion For Sanctions For Failing To Disclose Discovery Previously Ordered (docket no. 95), Exhibit C.

In the declaration attached to the prosecution's e-mail, Ms. Pascual refers to language in an order to compel in *United States v. Huang,* Criminal Case No. 09–00014, that required the United States to produce "a copy of the DEA Laboratory Operations Manual regarding the procedures and standards *to be utilized* in the testing of methamphetamine and d-methamphetamine hydrochloride"—not to the language of either of the orders in this case quoted above. Declaration of Elizabeth Pascual, unnumbered paragraph 2 (emphasis added). Ms. Pascual then avers that substances thought to be controlled substances are treated as unknown substances in DEA laboratories and that DEA forensic chemists (FCs) have discretion in the manner and sequence in which they analyze such substances. *Id.* at unnumbered paragraph 3. She also explains that there is no one document that contains all of the "procedures and standards to be utilized in the testing of methamphetamine and d-methamphetamine hydrochloride." *Id.* Finally, she opines, as follows:

> Based upon my almost decade long familiarity with the *LOM* and based upon conversations specifically occasioned by the court's order that I have had with SF [ (Office of Forensic Sciences] ) colleagues, I know that to the extent such methamphetamine "procedures and standards" appear at all in the DEA *Laboratory Operations Manual* (LOM),

it [sic] is contained in two sentences at paragraph 7002.2D: "Determination of optical isomeric form (e.g., destropropoxyphene) will be performed whenever statutory considerations, sentencing guidelines, or control status would be affected. For further information on the determination of optical isomeric forms of methamphetamine, review the *LS–05–002 Reporting Methamphetamine Enantiomers.*"

Declaration of Elizabeth Pascual, unnumbered paragraph 3.

Despite the promise in the prosecution's February 19, 2010, e-mail to produce the DEA Agent's Field Manual within a week or so, it was not until March 17, 2010, that the prosecution finally produced redacted sections of that manual.

The defendants assert that they have not received any of the information concerning confidential informants required by the December 9, 2009, Order, other than redacted criminal history documents. The prosecution asserts that, on October 15, 2009, it had *already* produced payment information concerning confidential informants.

### 2. Arguments of the parties

The defendants point out that the prosecution was ordered to produce the sections of the manuals at issue here not once, but twice, on both a motion to compel and on denial of the prosecution's motion to reconsider. They note that the prosecution's latest purported justification for failure to comply as to the Laboratory Operations Manual, as set forth in a declaration of Ms. Pascual, is that only one or two sentences of that manual are relevant, and that no portion or section of that manual provides procedures specifically for testing methamphetamine and d-methamphetamine hydrochloride. They argue, however, that this explanation is really an effort to evade

compliance with the court's orders for disclosure, because it ignores the language of the orders for disclosure in this case, and, instead, relies on different language in an order for disclosure in a different case, which Ms. Pascual has then read unduly narrowly. As of the filing of their motions for sanctions, the defendants had not received any portion of the Agent's Field Manual. Thus, the defendants assert that the prosecution's failure to produce the sections of the manuals at issue is willful. The defendants assert that the failure to produce the documents as ordered has effectively impaired their defenses to the prosecution's benefit in that it has diminished the time available to them to review and analyze the material, to prepare effectively for cross-examination of the prosecution's expert, the DEA agents, and the informants, or to challenge the admissibility of the alleged contraband.

The defendants assert that they have not received any of the information concerning confidential informants required by the December 9, 2009, Order, other than redacted criminal history documents. They contend that such information is crucial to their defenses, where much of the prosecution's case depends upon confidential informants. The defendants also assert that the government has instructed the DEA agents not to take statements from confidential informants for fear of creating *Brady* or other impeachment material. Thus, they contend that the government is purposely suppressing any statements made by confidential informants to try to avoid impeachment material, making discovery concerning confidential informants that much more important.

The defendants assert that Rule 16(d)(2) of the Federal Rules of Criminal Procedure sets forth the available sanctions for failure to comply with a discovery order, including prohibiting a party from introducing undisclosed evidence. Here, because the prosecution still has not disclosed the pertinent portions of the manuals or other information that it was directed by the court to produce, the defendants assert that the court should preclude the prosecution from presenting the testimony of its drug expert, any DEA agent, or the DEA's confidential informants at trial. In the alternative, they request that the court order the prosecution to provide them with complete copies of the Laboratory Operations Manual and the Agent's Field Manual, so that they are sure to receive the required sections, as well as the other documents and source materials that Ms. Pascual avers that forensic chemists at the DEA laboratories use when they examine suspected drug evidence, and grant them a continuance to prepare to address the evidence, if it is ultimately disclosed at this late date.

The prosecution responds that it has produced the pertinent portions of the Laboratory Operations Manual, in the form of the Declaration of Ms. Pascual, and that it produced the pertinent sections of the Agent's Manual, with some "minor" redactions, on March 17, 2010. The prosecution also asserts that both manuals are available through the public website for the National Criminal Defense Lawyers' Association, and the defendants know that. Thus, the prosecution contends that it has not only produced the required materials, but that the defendants had access to the manuals sooner, if the manuals were really vital to their defenses. The prosecution also urges the court, at least in a footnote, to reconsider the prior orders compelling discovery of the manuals, on the ground that the manuals are not material to the defendants' defenses and producing the Agent's Manual could endanger agents in the field. Under these circumstances, the prosecution contends that no sanctions are justified.

The prosecution also disputes that it has failed to produce information concerning confidential informants, as required by court order. The prosecution asserts that defendant Norita was given payment information for informants on October 15, 2009, before any order compelling discovery was entered. The prosecution also asserts that it has not instructed DEA agents not to take notes, and points to affidavits of DEA agents attached to its response averring that no one has ever instructed those agents not to take notes. The prosecution asserts that the defendants' motion for sanctions for non-production of confidential informant information is based on unsupported and false accusations, which calls into question the ethics and competence of the parties asserting them.

In reply, defendant Sablan asserts that the prosecution's production of heavily redacted portions of the Agent's Manual, "obviously" omitting or redacting portions that "pertain" to use of informants, does not comply with the court's orders. The prosecution gives as an example Chapter 6612, identified from *Doe v. United States,* 48 Fed.Cl. 495, 497 n. 3 (Fed.Cl.2000), as a portion of the Agent's Manual that concerns informants, but which the prosecution has not produced in its entirety. Defendant Sablan also points out that no portion of the Agent's Manual produced so far pertains to payment of informants. Defendant Sablan also asserts that the prosecution is simply trying to rehash arguments that the court has already rejected, and that the prosecutor admits that he has not, personally, reviewed the manuals to determine what must be produced. Thus, defendant Sablan asserts that the prosecution is blatantly attempting to evade compliance with discovery orders.

### 3. *Applicable standards*

██ In a recent *en banc* decision, the Ninth Circuit Court of Appeals reiterated that "[a]ll federal courts are vested with inherent powers enabling them ... to ensure obedience to their orders." *United States v. W.R. Grace,* 526 F.3d 499, 509 (9th Cir.2008) (*en banc*) (citations and internal quotation marks omitted). Rule 16(d) of the Federal Rules of Criminal Procedure identifies specific sanctions for failure to comply with discovery, as follows:

**(d) Regulating Discovery.**

\* \* \*

**(2) Failure to Comply.** If a party fails to comply with this rule, the court may:

**(A)** order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;

**(B)** grant a continuance;

**(C)** prohibit that party from introducing the undisclosed evidence; or

**(D)** enter any other order that is just under the circumstances.

Fed.R.Crim.P. 16(d)(2). Thus, Rule 16(d) "provides a court with authority to 'prescribe such terms and conditions as are just' to remedy a violation of a discovery order." *United States v. Woodley,* 9 F.3d 774, 782 (9th Cir.1993) (quoting former language of Rule 16(d)(2)); *see id.* (finding that Rule 16(d), unlike analogous Federal Rules of Civil Procedure, did not provide independent authority for a monetary sanction); *United States v. Collins,* 764 F.2d 647, 653 (9th Cir.1985) ("Where a party fails to comply with a discovery request, the court may grant a continuance, or prohibit the party from introducing evidence not disclosed.").

██ Some time ago, the Ninth Circuit Court of Appeals held that the sanctions to be imposed, if any, because of a failure to comply with a pretrial discovery order rest within the sound discretion of the trial

court. *United States v. Baxter*, 492 F.2d 150, 174 (9th Cir.1973) (citing *Hansen v. United States*, 393 F.2d 763, 770 (8th Cir. 1968)); *accord United States v. Burgess*, 791 F.2d 676, 681 (9th Cir.1986); *United States v. Gee*, 695 F.2d 1165, 1168 (9th Cir.1983). One key question in the exercise of that discretion is whether the defendant was prejudiced by the prosecution's failure to comply. *Id.; see also Burgess*, 791 F.2d at 681 (where the sanction imposed prevents any possible prejudice, it is not an abuse of discretion). Even unintentional or inadvertent failure to comply with an order to produce may be sanctioned, if the defendant would suffer sufficiently severe prejudice because of the non-compliance. *See Burgess*, 791 F.2d at 681 (citing with approval *United States v. Padrone*, 406 F.2d 560 (2d Cir. 1969)).

### 4. Analysis

#### a. The Laboratory Operations Manual

■ Like the defendants, the court is not impressed with the rationale belatedly offered by Ms. Pascual, and apparently adopted by the prosecution, for failing to produce the sections of the Laboratory Operations Manual that the prosecution has *twice* been ordered to produce. Ms. Pascual relies on her quite narrow interpretation of an order *in another case* directing the prosecution to produce "a copy of the DEA Laboratory Operations Manual regarding *the procedures and standards to be utilized in the testing of methamphetamine and d-methamphetamine hydrochloride.*" Declaration of Elizabeth Pascual, unnumbered paragraph 2 (emphasis added). The language of the orders compelling production in this case, however, is broader, requiring the prosecution to produce "the section of the Laboratory Operations Manual *applicable to* the testing of methamphetamine and d-methamphetamine hydrochloride." Order on Defendants' Discovery Motions and Defendants' Motions to Compel (docket no. 45), 2; Order Denying The Government's Motion For Reconsideration, Denying Defendants' Motions For A Bill Of Particulars, Denying In Part And Granting In Part Defendants' Motions To Dismiss, And Granting Defendants' Motion To Sever (docket no. 80), 2–3. While Ms. Pascual seems to assume that the portions of the Laboratory Operations Manual that must be produced must specifically refer to "methamphetamine" or "d-methamphetamine hydrochloride" and must state "procedures and standards" applicable to those specific forms of methamphetamine, even if her interpretation of the language she relies on was reasonable, there is no such requirement in the orders compelling production in this case. Sections of the Laboratory Operations Manual that are "*applicable* to the testing of methamphetamine and d-methamphetamine hydrochloride," which is what the prosecution was ordered to produce in this case, quite obviously would not have to identify those particular controlled substances at all.

Indeed, the prosecution recognized as much in its motion to reconsider,

[T]he policies set forth in the manual are not organized by the type of drug; for example, there is no chapter on the processes to be followed in identifying methamphetamine specifically. Instead, the manual is organized by task: sampling, identification, quantitation, special program, how to fill out worksheets, etc. If the Defendants are looking for a single policy document that gives step-by-step instruction on how to analyze methamphetamine, it simply does not exist. *The upshot of this point is that the Government would have to produce the DEA Laboratory Operations Manual in its entirety in order for it to serve the*

*purpose the Defendants imagine it would.*

Prosecution's Motion For Reconsideration (docket no. 55), 11 (emphasis added). Thus, prior to Ms. Pascual's declaration, the prosecution understood that portions of the Laboratory Operations Manual "applicable to the testing of methamphetamine and d-methamphetamine hydrochloride" were *not* limited to sections specifically referring to those forms of methamphetamine.

It is appropriate in this case to ensure obedience to the court's prior orders compelling production of pertinent sections of the Laboratory Operations Manual, *W.R. Grace,* 526 F.3d at 509, particularly where the prosecution has *twice* been ordered to produce this information, and the continued failure to produce the sections of the Laboratory Operations Manual is premised on a narrow interpretation of language *not in the pertinent orders in this case.* It is also appropriate where the defendants have made a reasonable showing of prejudice, *see Baxter,* 492 F.2d at 174 (the prejudice to the party denied discovery is relevant to the sanctions to be imposed); *Burgess,* 791 F.2d at 681, in the form of a credible contention that the failure to produce the documents as ordered has effectively impaired the defendants' defenses to the prosecution's benefit in that it has prevented the defendants from reviewing and analyzing the material, effectively preparing for cross-examination of the prosecution's expert, or challenging the admissibility of the alleged contraband. Although the prosecution argued in its Motion For Reconsideration that the defendants are attempting to challenge the DEA laboratory's procedures for testing the purported controlled substances at issue here, which the prosecution contends is the wrong issue, rather than the accuracy of the laboratory's results, *see* Motion For Reconsideration (docket no. 55) at 4,

the undersigned agrees with Chief Judge Munson that the sections of the Laboratory Operations Manual that the defendants seek are not irrelevant. Order Denying The Government's Motion For Reconsideration, Denying Defendants' Motions For A Bill Of Particulars, Denying In Part And Granting In Part Defendants' Motions To Dismiss, And Granting Defendants' Motion To Sever (docket no. 80), 2–3.

Although the prosecution contends that the defendants cannot be prejudiced, where they claim to have access to the Laboratory Operations Manual through the public website for the National Criminal Defense Lawyers' Association (NCDLA), the court does not find that the defendants are necessarily able to access the same versions of the Laboratory Operations Manual currently in use, or even to verify that the Laboratory Operations Manual available on the NCDLA website is the same version as the one currently in use. This argument that the Laboratory Operations Manual is available to the defendants through other avenues is also one that the court rejected in its previous discovery orders, and it carries no more convincing weight now, where the prosecution is still not producing sections of the Laboratory Operations Manual that are fully responsive to two orders to do so.

These conclusions leave as the remaining question what sanctions, if any, should be imposed to ensure obedience to the court's prior orders and to remedy the prejudice to the defendants. *See Burgess,* 791 F.2d at 681 (considering whether the sanctions remedied the prejudice). The court finds, in its discretion, *see Baxter,* 492 F.2d at 174 (the sanctions to be imposed, if any, because of a failure to comply with a pretrial discovery order rest within the sound discretion of the trial court), that a remedy short of excluding

witnesses or evidence is appropriate in this case. Here, the prejudice that the defendants complain of can be remedied by imposing one of the alternative sanctions the defendants requested and something that the prosecution has already recognized would address the defendants' needs: The prosecution must "produce the DEA Laboratory Operations Manual in its entirety in order for it to serve the purpose the Defendants imagine it would." Prosecution's Motion For Reconsideration (docket no. 55) at 11. The court also finds that such production will be ordered sufficiently in advance of trial that a continuance—another alternative sanction suggested by the defendants—will not be necessary. If the prosecution fails to make the required production by the deadline imposed below, however, the court will consider striking exhibits or witnesses.

### b. The DEA Agent's Field Manual

■ The analysis of the question of whether or not to impose sanctions for failure to produce the DEA Agent's Field Manual can be more abbreviated, because, in the February 19, 2010, e-mail, the prosecution stated that it would be "able to produce the Field Agents Manual [sic] documents some time next week." Declaration Of Counsel For Defendant Sablan Supporting Pretrial Motions (docket no. 93), Exhibit A; Declaration Of [Counsel] In Support Of Defendant Roque Norita's Motion For Sanctions For Failing To Disclose Discovery Previously Ordered (docket no. 95), Exhibit C. The prosecution simply did not do so prior to the filing of the defendants' motions for sanctions, without offering any further excuse or explanation.

Again, it is appropriate in this case to ensure obedience to the court's prior orders compelling production of pertinent sections of the DEA Agent's Field Manual, *W.R. Grace,* 526 F.3d at 509, and the defendants have made a reasonable showing of prejudice, *see Baxter,* 492 F.2d at 174 (the prejudice to the party denied discovery is relevant to the sanctions to be imposed); *Burgess,* 791 F.2d at 681, in the form of an impediment to their ability to prepare to examine the DEA agents and the confidential informant. Again, their purported ability to obtain the Agent's Field Manual from the website of the NCDLA does not necessarily mean that they are able to access the same versions of the Agent's Field Manual currently in use, or even to verify that the Agent's Field Manual available on the NCDLA website is the same version as the one currently in use. Indeed, defendant Norita has pointed to inconsistencies between section numbers of the Agent's Field Manual that he has been able to glean from other cases and the section numbers of the portions of the Agent's Field Manual that the prosecution has so far produced. Again, the prosecution's argument about alternative access to the Agent's Field Manual is one that the court rejected in its previous discovery orders, and it carries no more convincing weight now, where the prosecution is still apparently selectively producing portions of the Agent's Field Manual.

Under these circumstances, the court finds that the appropriate sanction here, like the appropriate sanction for failure to produce the pertinent sections of the Laboratory Operations Manual, is to order the prosecution to produce the Agent's Field Manual *in its entirety.* If the prosecution fails to do so by the deadline imposed below, however, the court will consider striking exhibits or witnesses.

### c. Informant information

The defendants also seek an order compelling production of confidential informant information, in compliance with the December 9, 2009, Order. That order not only compelled production of portions of

the Agent's Field Manual concerning informants, it required the prosecution to produce "agent notes of its contact with the cooperating witnesses, as well as the cooperating witnesses' criminal histories, information concerning any plea agreements, payments, benefits or other compensation or consideration given or promised to the cooperating witnesses in exchange for their cooperation...." Order on Defendants' Discovery Motions and Defendants' Motions to Compel (docket no. 45) at 1, ¶ 1. The prosecution contends that it has produced pay information and at least redacted criminal histories, and attempts to show that it has not instructed any DEA agent not to take notes. What is missing from the prosecution's response is any explanation of the basis for redaction of the criminal histories, any representation that there are no notes to produce, any representation that notes, if they existed, have been produced, or any representation that there are no other documents, such as "plea agreements" or information concerning any other "benefits or other compensation or consideration given or promised to the cooperating witnesses in exchange for their cooperation," that are responsive to the discovery order.

Under these circumstances, the court simply cannot determine whether the disclosures that the prosecution has made are full and complete, nor can the court determine whether the defendants have been prejudiced by inadequate disclosures. Moreover, where the prosecution contends that it has already produced payment information, the prosecution certainly cannot credibly complain if it is required to produce that information again.

The court will reserve ruling on this part of the defendants' motion to compel, subject to the following requirements: The prosecution shall produce *promptly*, for the court's *ex parte* and *in camera* review,

copies of the unredacted criminal histories of any confidential informants and copies of the redacted criminal histories that it has produced to the defendants; an itemized list of every document that the prosecution has produced in response to paragraph 1 of the court's December 9, 2009, Order, or that the prosecution previously produced that would have been responsive to that order; copies of any additional documents that the prosecution may now find, upon diligent review, are responsive to paragraph 1 of that Order; and an affidavit of counsel representing that, after diligent review, there are no other documents responsive to paragraph 1 of that Order. Such a course is appropriate, not least because of the prosecution's persistent failure to comply with other portions of the December 9, 2009, Order and the subsequent January 22, 2010, Order pertaining to discovery of the Laboratory Operations Manual and the Agent's Filed Manual. After *ex parte* and *in camera* review, the court will determine whether the prosecution's disclosures in response to paragraph 1 of the December 9, 2009, Order have been adequate and, if not, what, if any, sanctions for continued non-compliance are appropriate, as well as what further disclosures must now be made.

#### d. Confidentiality

Notwithstanding that the prosecution should already have produced the documents in question, the court recognizes that the prosecution may have some legitimate concerns about the confidentiality or "sensitivity" of the documents at issue in these motions for sanctions, particularly where the court will now require the prosecution to produce both manuals in their entirety, and may ultimately require production of sensitive information about confidential informants. Thus, the court will order disclosure subject to the following confidentiality limitations: Further disclo-

sure of the manuals and other documents in question to anyone other than the parties' attorneys and the parties' expert witnesses without prior permission from the court is prohibited. Specifically, there does not appear to the court to be any reason that either of the manuals or any additional information concerning the confidential informants that the court may ultimately order the prosecution to produce should be disclosed to the defendants themselves.

### 5. Conclusion

The defendants' motions for sanctions for failure to produce the pertinent sections of the Laboratory Operations Manual and the Agent's Field Manual will be granted. Subject to the confidentiality limitations imposed above, the prosecution must produce not later than April 1, 2010, the Laboratory Operations Manual, unredacted and in its entirety, and the Agent's Field Manual, unredacted and in its entirety. Ruling is reserved on the portion of the defendants' motion concerning information about confidential informants, pending *ex parte* and *in camera* review by the court of the materials that the prosecution is required to submit in subsection *c,* above, which shall, likewise, be submitted not later than April 1, 2010.

### B. The Motion For Sanctions For Failure To Provide Adequate Expert Witness Summaries

The next motion that the court will consider in this ruling is defendant Norita's motion for sanctions for failing to disclose adequate written expert witness summaries (docket no. 96), joined in by defendant Sablan (docket no. 98). The defendants contend that the prosecution's November 9, 2009, Notice Of Intent To Present Expert Testimony fails to comply with Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure.

### 1. Background

Apparently in response to a motion by defendant Norita, filed October 22, 2009, and subsequently joined in by defendant Sablan, requesting a written summary of testimony of the prosecution's expert witnesses pursuant to Rule 16(a)(1)(G), the prosecution filed on November 20, 2009, a Notice Of Intent To Present Expert Testimony (Notice) (docket no. 29). The body of that Notice stated, in its entirety, the following:

> Pursuant to Fed.R.Crim.P. 16(a)(1)(G) and Federal Evidence Rule 702, the United States of America hereby gives notice of its intent to present expert testimony from forensic chemist Daniel Roesch at trial. Mr. Roesch will testify to the identification, weight and purity of Exhibits 14 (Bates Number RJI000057), 15 (RJI000112), 19 (RJI000126), 24 (RJI000131) and 25 (RJI000140).
>
> A copy of Mr. Roesch's *curriculum vitae* is attached hereto.

Notice Of Intent To Present Expert Testimony (docket no. 29).

Apparently in response to the defendants' motion, now before the court, asserting the inadequacy of the November 20, 2009, Notice, the prosecution filed on March 16, 2010, an Amended Notice Of Intent To Present Expert Testimony (Amended Notice) (docket no. 100). The Amended Notice not only identified Mr. Roesch as an expert witness who will testify in this cased as to Exhibits 14, 15, 24, and 25, but also identified DEA forensic chemist Helene Jensen as an expert who will testify at trial concerning Exhibit 19. The Amended Notice also stated that written summaries of the testimony of these witnesses were attached, with each witness's curriculum vitae. The attached summaries appear to be by, and are signed

by, the experts themselves, and both state the following, after statements of their names, employment, and references to each expert's qualifications in his or her *curriculum vitae:*

 3. The opinions described below are based on chemical, physical, and/or instrumental analyses, the results generated by those analyses, and my interpretation of those results.

 4. I have examined and analyzed the substance(s) contained in the exhibit(s) which were submitted for analysis in the above referenced case.

 5. In my opinion, the substances referred to herein as Exhibits [14, 15, 19, 24, and 25, as the case may be] have been identified as follows....

Amended Notice, Attachments. For each Exhibit, the summaries then state the active drug ingredient, net weight of samples received, the concentration (if applicable), and the specific physical, chemical, and instrumental analyses used. *Id.*

## 2. Arguments of the parties

The defendants assert that the November 9, 2009, Notice failed to comply with Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, because absent from that Notice was any written summary setting forth the bases and reasons for the expert witness's opinions listed in the Notice. The defendants argue that the prosecution's failure to comply with Rule 16(a)(1)(G) is consistent with the prosecution's failure to disclose the Laboratory Operations Manual, because the prosecution would have had to identify the Laboratory Operations Manual as one of the bases for its expert's opinions. They argue that the present deficiency is a further demonstration of the prosecution's bad faith. Thus, they contend that the court should now sanction the prosecution pursuant to Rule 16(d)(2) by precluding the

prosecution's experts from testifying at the trial. In the alternative, the defendants assert that the court should order immediate production of a detailed and complete written summary.

The prosecution responds that it failed to produce adequate written summaries until March 16, 2010, owing to an oversight, but that it has now done so. The prosecution also contends that it has previously produced the forensic chemist's worksheets that show, in detail, the tests, readings, computations, and results obtained, in addition to the formal laboratory reports. Under the circumstances, the prosecution contends that the defendants have not been prejudiced by the belated filing of written summaries and that no sanctions are appropriate.

## 3. Analysis

 Rule 16(a)(1)(G), formerly Rule 16(a)(1)(E), of the Federal Rules of Criminal Procedure identifies "information subject to disclosure" as including "expert witnesses." That section states, in pertinent part, the following:

> **(G) Expert Witnesses.**—At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.... The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

FED.R.CRIM.P. 16(a)(1)(G). The Ninth Circuit Court of Appeals has recognized that "[t]he Rule 'is intended to minimize surprise that often results from unexpected testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-

examination.'" *United States v. Figueroa–Lopez*, 125 F.3d 1241, 1246 (9th Cir.1997) (quoting advisory committee notes to former FED.R.CRIM.P. 16(a)(1)(E)). The Ninth Circuit Court of Appeals has also noted, "Although subsection (a)(1)(E) does not include specific timing requirements, 'it is expected that the parties will make their requests and disclosures in a timely fashion.'" *United States v. VonWillie*, 59 F.3d 922, 928 n. 4 (9th Cir.1995) (quoting FED.R.CRIM.P. 16 advisory committee notes). To obtain relief from the prosecution's failure to provide an adequate written summary of an expert's opinions, the defendant must show prejudice. *Figueroa–Lopez*, 125 F.3d at 1247 ("As for discovery, a violation of Rule 16 does not itself require reversal, or even exclusion of the affected testimony," because the defendant also "must demonstrate prejudice to substantial rights" to obtain relief).

■ The court concludes that the November 9, 2009, Notice manifestly failed to satisfy the express requirements or purposes of Rule 16(a)(1)(G), because no summary at all was provided with the identification of the original expert witness in that Notice. Assuming, without deciding, that other information provided by the prosecution—including the forensic chemist's worksheets that show, in detail, the tests, readings, computations, and results obtained, in addition to the formal laboratory reports—would not avoid whatever prejudice might be suffered by the defendants in the absence of adequate written summaries, the court concludes that the only issues now presented by the defendants' motion, in light of the prosecution's filing of an Amended Notice, are whether the prosecution's Amended Notice satisfies the requirements of Rule 16(a)(1)(G), and whether the timing of that Amended Notice, if that Amended Notice is otherwise sufficient, moots the defendants' motion for sanctions.

■ Here, the court finds that the prosecution's Amended Notice complies with the requirements of Rule 16(a)(1)(G): It states each expert's opinions, that is, that the samples in question contained certain amounts of controlled substances, the bases and reasons for those opinions, in that it specifies the tests used on each sample, and the witnesses' qualifications, in that each witness's *curriculum vitae* is attached. *See* FED.R.CRIM.P. 16(a)(1)(G) ("The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."). Although the defendants assert that an adequate summary of the reasons and bases for the experts' opinions would have had to include identification of the Laboratory Operations Manual, the court does not agree. The bases for the experts' opinions are the tests that the experts performed, not the manual or procedures that suggested or required any particular test. Moreover, the information provided is sufficient, in the court's view, to serve the purposes of Rule 16(a)(1)(G) "'to minimize surprise that often results from unexpected testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" *Figueroa–Lopez*, 125 F.3d at 1246 (quoting former FED.R.CRIM.P. 16(a)(1)(E) (advisory committee's note)).

Although there is no doubt that the prosecution could and should have provided a written summary with its November 9, 2009, Notice, *see VonWillie*, 59 F.3d at 928 n. 4 ("'[I]t is expected that the parties will make their requests and disclosures in a timely fashion.'" (quoting FED.R.CRIM.P. 16 advisory committee notes)), the Amended Notice, filed March 16, 2010, nearly a month before trial, was still sufficiently

timely to allow the defendants to prepare to meet the experts' testimony. The court finds that the delay is more likely a matter of sloppy practice than an intentional, and bad faith, attempt to "hide the ball." Whatever the reason for the failure to include any written summary with the initial Notice, the defendants cannot assert a credible claim that they were prejudiced by the timing of the disclosure of adequate written summaries in the Amended Notice. *See Figueroa–Lopez,* 125 F.3d at 1246 (the defendant must show prejudice to obtain sanctions for a discovery violation). Therefore, no sanctions will be imposed, where the defendants' motion for sanctions is essentially mooted by the adequate and sufficiently timely Amended Notice.

The defendants' motion for sanctions for failure to disclose adequate written summaries of expert testimony will be denied as moot.

### C. The Motion To Sever

Defendant Sablan has also moved to sever **Count 7** (notice of motions, docket no. 88 and brief, docket no. 91). **Count 7** charges that, on or about March or April of 2009, defendant Norita, during and in relation to a drug-trafficking crime, knowingly used a firearm, namely a .223 caliber Armalite Model M15A2 rifle, serial number US48714, by trading it for methamphetamine, all in violation of 18 U.S.C. § 924(c)(1)(A).

### 1. Arguments of the parties

Defendant Sablan points out that the court has previously severed two felon-in-possession-of-a-firearm charges against defendant Norita for separate trial on the ground that trial of the gun counts with the drug-trafficking counts was unduly prejudicial to both defendants Sablan and Norita. Sablan points out that even though **Count 7** was only added in the Second Superseding Indictment, after severance of the felon-in-possession-of-a-firearm charges, she is not a co-defendant on the new gun charge in **Count 7,** under any theory, such as co-conspirator *Pinkerton* liability. Defendant Sablan asserts that **Count 7** is not alleged to be a part of the alleged conspiracy between Norita and Sablan, so that it is no different from the felon-in-possession-of-a-firearm charges already severed. Therefore, she asserts that **Count 7** should be tried separately with the felon-in-possession-of-a-firearm charges.

The prosecution argues, first, that the gun charge in **Count 7** was properly joined with the drug charges, because all charges grow out of related transactions or incidents; indeed, the prosecution asserts that its theory is that the gun was bartered in exchange for methamphetamine. The prosecution also argues that there is no compelling reason to sever the gun count, because defendant Sablan has not articulated what prejudice she will purportedly suffer from joinder of the gun count against a co-defendant, and the gun count is part of the alleged drug conspiracy, because paragraph 4 of the Second Superseding Indictment alleges that the conspirators would distribute "ice" in exchange for money or other things of value, including firearms. The prosecution also points out that the criminal activity at issue in the gun count is related in time and place, so that it does not have an unduly prejudicial "spillover" effect.

In reply, defendant Sablan asserts that "judicial economy" is the fundamental factor in ruling on a severance motion. Here, she asserts that judicial economy will be served by severing **Count 7** for trial with the other, already severed felon-in-possession-of-a-firearm charges. She also argues that, even if the prosecution's theory is that Norita bartered guns for drugs, she is not related to that transaction, because the

prosecution apparently has no evidence linking her to the exchange of guns for drugs. For the same reasons, she contends that she is not linked to the alleged objective of the conspiracy of exchanging guns for drugs. Instead, she asserts that the gun allegation is serious enough to create a "toxic mix" that is too prejudicial to her to be tried in the same proceedings, in the absence of any link between her and the gun transaction. Finally, she contends that **Count 7** has been misjoined, because the lack of any allegation of a theory of criminal liability as to her demonstrates that the gun count is not of the same or similar character to other charged offenses or part of the same scheme or plan.

### 2. Analysis

■ Rule 8(a) of the Federal Rules of Criminal Procedure provides for joinder of offenses against a single defendant if one of three conditions is satisfied: (1) the offenses charged were "of the same or similar character"; (2) the offenses were "based on the same act or transaction"; or (3) the offenses were "connected with or constituted parts of a common scheme or plan." FED.R.CRIM.P. 8(a); *United States v. Jawara*, 474 F.3d 565, 572 (9th Cir. 2007). At the same time, Rule 14 of the Federal Rules of Criminal Procedure permits the court to "order separate trials of counts," in its discretion, "[i]f the joinder of offenses ... in an indictment ... appears to prejudice a defendant." FED. R.CRIM.P. 14(a); *Jawara*, 474 F.3d at 572. "Thus, '[e]ven if joinder is permissible under Rule 8, a party who feels prejudiced by joinder may move to sever pursuant to [Rule] 14.'" *Jawara*, 474 F.3d at 572 (quoting *United States v. Smith*, 795 F.2d 841, 850 (9th Cir.1986), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1987)).

The Ninth Circuit Court of Appeals has recognized that the question of whether certain counts should be severed depends upon whether joinder of the counts for a single trial is "'so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy and compel[s] the exercise of the court's discretion to sever.'" *United States v. Lopez*, 477 F.3d 1110, 1116 (9th Cir.2007) (quoting *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir.1976)). The Ninth Circuit Court of Appeals defines "manifestly prejudicial, in this context," to mean "'of such magnitude that the defendant's right to a fair trial was [or will be] abridged.'" *Id.* at 1116 n. 24 (quoting with approval *United States v. Lewis*, 787 F.2d 1318, 1321,) *as amended*, (798 F.2d 1250 (9th Cir.1986)). The Ninth Circuit Court of Appeals has held that severance is not required, for example, when the evidence regarding each of the charges is "extensively interrelated," such that the charges are reasonably consolidated into one trial. *Id.*

■ In this case, in severing the felon-in-possession-of-a-firearm charges against defendant Norita, Chief Judge Munson relied on *United States v. Nguyen*, 88 F.3d 812, 815–17 (9th Cir.1996), finding potential prejudice to defendant Sablan, as well as to defendant Norita, if the jury was allowed to hear evidence relating to defendant Norita's alleged previous felony conviction, particularly where only one of the two defendants was charged with the felon-in-possession offenses. Chief Judge Munson concluded, "This situation was of particular concern to the Ninth Circuit: '[i]t is much more difficult for jurors to compartmentalize damaging information about one defendant derived from joined counts than it is to compartmentalize evidence against separate defendants joined for trial.'" Order Denying The Government's Motion For Reconsideration, Deny-

ing Defendants' Motions For A Bill Of Particulars, Denying In Part And Granting In Part Defendants' Motions To Dismiss, And Granting Defendants' Motion To Sever (docket no. 80) at 9 (quoting *Nguyen,* 88 F.3d at 816). Chief Judge Munson found that "there is a significant chance of prejudice" requiring severance of the felon-in-possession-of-a-firearm offenses. *Id.*

While I agree with Chief Judge Munson's conclusion that the potential prejudice to both defendants from the felon-in-possession-of-a-firearm offenses against defendant Norita warranted severance of those counts, particularly in light of *Nguyen,* it does not follow that the new charge, only against defendant Norita, of using a firearm during and in relation to a drug-trafficking crime must also be severed to avoid potential prejudice to defendant Sablan. This is true for several reasons.

First, defendant Sablan's arguments notwithstanding, the new gun charge *is* "connected with" the other offenses charged in this case and, indeed, the gun and drug counts may have "constituted parts of a common scheme or plan." FED. R.CRIM.P. 8(a); *United States v. Jawara,* 474 F.3d 565, 572 (9th Cir.2007). The drug conspiracy charge in **Count 1** is alleged to have involved a conspiracy "from on or about August of 2008 ... and continuing through on or about July 28, 2009." Second Superseding Indictment, **Count 1,** ¶ 1. The new charge of using a firearm during and in relation to a drug-trafficking crime allegedly was committed "[o]n or about March or April 2009," *Id.* at **Count 7,** ¶ 17, that is, within the time frame of the charged drug conspiracy. Moreover, the gun count expressly charges that defendant Norita used the firearm "by trading it for methamphetamine," *id.,* and procuring methamphetamine is consistent with the goals of a conspiracy to distribute

and to possess with intent to distribute methamphetamine.

While the prosecution asserts that paragraph 4 of the Second Superseding Indictment establishes that trading guns for drugs was part of the conspiracy, the court finds that paragraph 4 and **Count 7** have the offeror and recipient of the guns the opposite way around: Paragraph 4 alleges that the defendants "distributed those controlled substances in exchange for money or other things of value, including firearms," but **Count 7** alleges that defendant Norita violated 18 U.S.C. § 924(c)(1)(A) "by trading [the firearm alleged] for methamphetamine." Indeed, if the prosecution were to rely on an allegation that defendant Norita *received* guns for drugs, that allegation would not support a charge of "using" a firearm during and in relation to a drug-trafficking crime within the meaning of 18 U.S.C. § 924(c)(1)(A). *Compare Smith v. United States,* 508 U.S. 223, 241, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (holding that "a criminal who trades his firearm for drugs 'uses' it during and in relation to a drug trafficking offense within the meaning of § 924(c)(1)"); *with Watson v. United States,* 552 U.S. 74, 83, 128 S.Ct. 579, 169 L.Ed.2d 472 (2007) ("[W]e hold that a person does not 'use' a firearm under § 924(c)(1)(A) when he receives it in trade for drugs.").

Nevertheless, neither the failure of **Count 7** to charge expressly that the drug-trafficking crime during and in relation to which the firearm was used was the drug conspiracy in **Count 1** nor the failure of **Count 7** to charge defendant Sablan with the gun offense based on *Pinkerton* liability or any other theory necessarily breaks the connection between the gun crime and the drug conspiracy crime charged. **Count 7** *does* reallege, adopt, and incorporate by reference the factual allegations contained in all preceding paragraphs, *id.*

at **Count 7,** ¶ 16, thereby effectively, if inartfully, alleging that the use of the firearm was in furtherance of *drug crimes* previously alleged. Thus, severance is not required, because the evidence regarding each of the charges is likely to be "extensively interrelated." *Lopez,* 477 F.3d at 1116 (severance to prevent prejudice may not be appropriate, if the charges in question are "extensively related").

Second, contrary to defendant Sablan's contentions, severing **Count 7** for trial with the already-severed felon-in-possession-of-a-firearm counts, also only against defendant Norita, does *not* result in judicial economy. *Lopez,* 477 F.3d at 1116 (the question of whether certain counts should be severed depends upon whether joinder of the counts for a single trial is " 'so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy and compel[s] the exercise of the court's discretion to sever' " (quoting *Brashier,* 548 F.2d at 1323)). Because the charge in **Count 7** is using a firearm during and in relation to a drug-trafficking crime, judicial economy will only be served by trying that charge with the related drug-trafficking crime or crimes, not by severing it for a separate trial, with otherwise unrelated gun counts, in which the prosecution would *again* have to present evidence of the related drug-trafficking crime or crimes to establish the necessary relationship between the use of the gun and a drug-trafficking crime.

Third, trial of the new gun count with the drug charges does not involve the potential for prejudice to *either* defendant that might arise from injection of evidence of one defendant's *unrelated prior* felony conviction. In other words, it does not involve the kind of prejudice arising from trying a felon-in-possession-of-a-firearm charge with other charges that troubled the Ninth Circuit Court of Appeals in

*Nguyen* and Chief Judge Munson in this case in his ruling to sever former **Counts 7** and **8.** *See Nguyen,* 88 F.3d at 816–17 (identifying the potential prejudice as " 'a high risk of undue prejudice whenever, as in this case, joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible,' " quoting *Lewis,* 787 F.2d at 1322). Here, the evidence in support of the charge of using a firearm during and in relation to a drug-trafficking crime would not be inadmissible on the trial of interrelated drug charges. *Id.*

Fourth, there is less likelihood of prejudice to the defendant *not* charged with the gun offense in a two-defendant trial, if the gun charge against the other defendant is joined for trial, than there might be in a single-defendant case involving both gun and drug charges. While *Nguyen* involved the trial of a single defendant (co-defendants had either pleaded guilty before trial or were never arrested), *Nguyen,* 88 F.3d at 814, the trial in this case will involve two defendants. Contrary to Sablan's assertions, and apparently contrary to Chief Judge Munson's reading, I read *Nguyen* to suggest that the likelihood of prejudice to the non-charged defendant in these circumstances is *less,* because the court observed in *Nguyen* "that '[i]t is much more difficult for jurors to compartmentalize damaging information about one defendant derived from joined counts than it is to compartmentalize evidence against separate defendants joined for trial.' " *Id.* at 816 (quoting *Lewis,* 787 F.2d at 1322, with internal citations omitted). Specifically, here, jurors can reasonably be expected to "compartmentalize" evidence on a gun charge against defendant Norita as irrelevant to the charges against defendant Sablan, the separate defendant joined for trial. *Id.*

Finally, assuming that there is some prejudice to defendant Sablan from trying the gun count against defendant Norita in the same trial, that prejudice can be effectively mitigated by a proper limiting instruction. Specifically, the court will give Ninth Circuit Model Criminal Jury Instruction 3.14, which, in pertinent part, instructs the jurors that they "must decide the case of each defendant on each crime charged against that defendant separately." Although the Ninth Circuit Court of Appeals expressed some concern in *Nguyen* about the efficacy of a limiting instruction concerning separate consideration of each charge against *one* defendant, *see Nguyen,* 88 F.3d at 817, the Ninth Circuit Court of Appeals has since recognized the efficacy of limiting instructions, in multi-defendant trials, that tell the jurors to consider the evidence against each defendant and to separately evaluate each one's guilt. *See, e.g., United States v. Decoud,* 456 F.3d 996, 1009 (9th Cir.2006) (citing *United States v. Fernandez,* 388 F.3d 1199, 1243 (9th Cir.2004), as specifying that a district court's limiting instructions for the jury to "evaluate each defendant's guilt separately ... more than sufficient[ly] guard against the possibility of prejudice to the defendants"). Nothing about the gun charge against defendant Norita is so inflammatory that it suggests that the jury will be unable to evaluate the case against each defendant separately. *Id.*

In short, defendant Sablan has failed to show that trial of the gun count against defendant Norita with the drug charges against defendants Norita and Sablan is "so manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy and compel[s] the exercise of the court's discretion to sever." *Lopez,* 477 F.3d at 1116 (internal quotation marks and citations omitted). Whatever possible prejudice defendant Sablan might suffer from joinder of the charges is *not* "of such

magnitude that the defendant's right to a fair trial was [or will be] abridged," *id.* at 1116 n. 24 (internal quotation marks and citations omitted), and a limiting instruction will be given effectively mitigating any potential prejudice to defendant Sablan. *See Decoud,* 456 F.3d at 1009.

Therefore, defendant Sablan's motion to sever **Count 7** will be denied.

### D. The Motion For Appointment Of Counsel

#### 1. Arguments of the parties

The last motion addressed in this ruling is defendant Sablan's motion for CJA appointment (notice of motions, docket no. 88, and brief, docket no. 92; financial affidavit, docket no. 97). In that motion, defendant Sablan asserts that 18 U.S.C. § 3006A(c) permits appointment of retained counsel as a CJA attorney when a defendant becomes unable to pay retained counsel. Defendant Sablan asserts that the interests of justice support appointing her retained counsel to continue representing her as CJA counsel. In a supporting declaration, counsel explains that he received an initial small retainer from defendant Sablan's family with the assurance that the family would pay the additional fees and costs incurred, but that defendant Sablan's family is now unable to continue paying the fees and costs associated with this prosecution, and that continuing the representation without further payment will impose a hardship on counsel.

The prosecution weighed in on this issue, as well as the others raised by defendant Sablan. The prosecution contends that defendant Sablan did not fully and honestly prepare her financial affidavit, because she did not mark either "yes" or "no" concerning whether she had any *real* estate, stocks, bonds, notes, automobiles, or other valuable property, although she did declare a vehicle worth $2,000. Thus,

the prosecution contends that the court cannot tell whether or not defendant Sablan is eligible for appointed counsel until she completes a complete and truthful financial affidavit.

The prosecution's response necessitated a reply by defendant Sablan, in which she challenges the prosecution's standing to offer any opposition. Defendant Sablan also asserts that a review of her financial affidavit shows that it has been properly completed, because, in response to the inquiry about additional assets, which requires her to describe them if she has any, she has described an automobile and its value. She points out that, if the answer was "no," she would not have offered any description of an asset.

### 2. Analysis

 The court finds that both counsel's declaration and defendant Sablan's Financial Affidavit (docket no. 97) demonstrate that defendant Sablan does not have financial resources to pay for retained counsel. Although the prosecution has pointed out a technical flaw in defendant Sablan's financial affidavit, in that she did not mark "yes" or "no" in response to a question about other assets, she did provide a description and value of an asset, an automobile, which she was only required to do if she answered "yes." The clear implication from her financial affidavit is that the *only* asset that she has that she was required to disclose by the question at issue was her automobile. Assuming, *without deciding*, that the prosecution has standing to challenge the sufficiency of defendant Sablan's financial affidavit, the prosecution's challenge here is a hypertechnical one that does nothing to undermine the court's conclusion that defendant Sablan does not have the resources to pay for retained counsel.

Section 18 of United States Code Title 3006A provides, in pertinent part, "If at any stage of the proceedings, including an appeal, the United States magistrate judge or the court finds that the person is financially unable to pay counsel whom he had retained, it may appoint counsel as provided in subsection (b) and authorize payment as provided in subsection (d), as the interests of justice may dictate." 18 U.S.C. § 3006A(c). Thus, the statute, on its face, provides for appointment of counsel in the circumstances presented here, that is, in the midst of criminal proceedings, when the defendant becomes unable to pay counsel, if to do so is in "the interests of justice."

Although defendant Sablan has not cited, and the court has not found, any decision of the Ninth Circuit Court of Appeals expressly addressing appointment of retained counsel to continue representation in a criminal case, the Second Circuit Court of Appeals has considered in some detail the factors that are relevant to whether the "interests of justice" warrant such a "mid-case appointment" of retained counsel. *See United States v. Parker*, 439 F.3d 81, 99 & n. 17 (2d Cir.2006). With the factors identified in *Parker* in mind, the court finds that, not only do defendant Sablan's financial circumstances warrant appointment of counsel, but nothing suggests that her inability to pay counsel involved a scheme to circumvent the CJA procedures. *Id.* Furthermore, the interests of justice "dictate that the district court appoint previously retained counsel" in light of "counsel's familiarity with the case, the importance of continuity of representation, and the potential delay if new counsel is appointed." *Id.* Finally, defendant Sablan's retained counsel represents in his declaration that he is already a member of the CJA panel for the District of Northern Mariana Islands, so that appointing him as a CJA attorney does not

require appointing an attorney who is not already on the CJA panel, ahead of others who are, or appointing an attorney who is unfamiliar with the requirements of a CJA appointment.

Therefore, defendant Sablan's motion for CJA appointment of retained counsel will be granted, because appointing her formerly retained counsel to continue representing her as appointed counsel is in "the interest of justice."

## III. CONCLUSION

Upon the foregoing,

1. The defendants' motions for discovery sanctions (notice of motions, docket no. 88, and brief, docket no. 89; docket no. 94; joinders docket nos. 98 and 99) concerning the prosecution's failure to comply with prior orders requiring disclosure of sections of the DEA Laboratory Operations Manual applicable to the testing of methamphetamine and d-methamphetamine hydrochloride and sections of the DEA Agent's Field Manual pertaining to use of confidential informants and requiring disclosure of information concerning confidential informants is **granted in part,** but ruling is also **reserved in part,** as follows:

a. The portions of the motions seeking to compel disclosure of sections of the Laboratory Operations Manual and the Agent's Field Manual and for appropriate sanctions for non-disclosure are **granted** to the extent that the prosecution must produce **not later than April 1, 2010,** the Laboratory Operations Manual, in its entirety, and the Agent's Field Manual, in its entirety.

b. Ruling is **reserved** on the portions of the motions seeking to compel confidential informant information. The prosecution shall produce **not later than April 1, 2010,** for the court's *ex parte* and *in camera* review, copies of the unredacted criminal histories of any con-fidential informants and copies of the redacted criminal histories that it has produced to the defendants; an itemized list of every document that the prosecution has produced in response to paragraph 1 of the court's December 9, 2009, Order, or that the prosecution previously produced that would have been responsive to that order; copies of any additional documents that the prosecution may now find, upon diligent review, are responsive to paragraph 1 of that Order; and an affidavit of counsel representing that, after diligent review, there are no other documents responsive to paragraph 1 of that Order.

Further disclosure of the documents in question to anyone other than the parties' attorneys and the parties' expert witnesses, without prior permission from the court, is prohibited.

2. Defendant Norita's motion for sanctions for failing to disclose adequate written expert witness summaries (docket no. 96), joined in by defendant Sablan (docket no. 98), is **denied as moot,** in light of the prosecution's filing of adequate written summaries of expert witnesses' testimony in an Amended Notice (docket no. 100) on March 16, 2010.

3. Defendant Sablan's motion to sever **Count 7** (brief, docket no. 91) is **denied.**

4. Defendant Sablan's motion for CJA appointment of retained counsel (notice of motions, docket no. 88, and brief, docket no. 92; financial affidavit, docket no. 97) is **granted.** Counsel G. Anthony Long is appointed to represent defendant Sablan pursuant to 18 U.S.C. § 3006A(c).

FURTHERMORE, to avoid exposure of potential jurors to information about the matters addressed in this ruling, this ruling shall be sealed until ten days after completion of trial or the guilty pleas of both defendants, unless a party files a

motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED.**